Kenneth Wayne DICKSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8609–CR–833.

Supreme Court of Indiana.

March 22, 1988.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Robbery, a Class B felony, for which he received a sentence of twenty (20) years; Confinement, a Class B felony, for which he received a sentence of twenty (20) years; and Murder, for which he received a sentence of forty (40) years, all sentences to run consecutively.

The facts are: On the evening of September 5, 1984, James Brussow was working as a clerk at a Super 7 Food Store at 21st and Mitthoeffer Road in Indianapolis. At approximately 9:00 p.m., Brussow noticed appellant at the magazine rack about two feet away because appellant stood at the rack for a long time. Steve Cass worked at Domino's Pizza next door to the Super 7. Brussow and Cass had become acquainted because Cass frequently visited the Super 7 and purchased items while on his break from work. Brussow asked Cass to go next door and get some change because he was running low. At that time, Leonard Dearduff entered the Super 7 and purchased some soft drinks. He spent several minutes in the store.

Cass returned and continued talking with Brussow at the cash register. At that time, appellant walked up to them and announced that he was robbing them. He told them to open the register and get on the floor. Cass said, "What?" and appellant raised a .22 caliber pistol and pointed it at Cass's head, fired the gun then pointed it at Brussow. He repeated, "Open the cash register and get on the floor." After the register was open, appellant took approximately $82.00 and walked out of the store. Cass died from the gunshot wound.

Brussow estimated that appellant was in the store for twenty minutes. He gave a detailed description of his physical characteristics. At trial, Brussow testified he was sure appellant was the man who shot Cass.

Dearduff noticed appellant when he was in the store purchasing soft drinks. Dearduff, a barber, saw the side of appellant's face and noticed his collar-length feathered hair which curled up on the end. Dearduff identified appellant as the man in the Super 7.

Kelly Hatcher testified that on the weekend of September 4, appellant and his friend Ronald Meeks unexpectedly visited her and her husband Mark, who was appellant's cousin, and they stayed for a few days. Upon their arrival, they showed Mark a .22 caliber automatic pistol. On the evening of September 5, appellant and Meeks left the apartment, which was located three blocks from the Super 7, and returned at about 1:00 a.m. At that time, Meeks rubbed a tonic on appellant's hair which turned it from brown to orange.

On September 12, 1984, appellant was in the custody of the Ft. Lauderdale Police Department. Police discovered there was a warrant for his arrest in Tennessee for the larceny of a gun, which turned out to be the murder weapon in the case at bar. They also learned he was wanted in Indianapolis in the instant case.

In Florida, appellant was interviewed by Detective Benoit. Benoit testified that appellant was given his *Miranda* warnings and waived his rights. Appellant then admitted that he took the gun from his father and held up the store, but that the gun went off accidentally and he did not mean to shoot anyone. Benoit said when appellant talked of the shooting he "broke down" as though he was going to cry. In a tape-recorded statement, appellant acknowledged that he had been advised of his rights then he repeated his confession.

Appellant believes reversible error was committed when the trial court admit-

ted into evidence the *Miranda* rights waiver signed by him, his confession, his taped confession, and a search waiver form. Appellant contends that because he was in custody, informed by police that he was being held under a warrant in Tennessee and a suspect in a murder robbery in Indiana, and because he was only 18 at the time, he did not waive his *Miranda* rights voluntarily. Therefore, he believes the above-mentioned evidence should have been excluded.

The question of whether there has been a valid waiver of *Miranda* rights depends upon whether the defendant was advised of his rights then voluntarily chose to forego them. Upon review, we look to the totality of the circumstances and determine whether there was substantial evidence of probative value to support the trial court's finding. *Patton v. State* (1986), Ind., 501 N.E. 2d 436.

At trial, Detective Benoit testified that he read each *Miranda* right to appellant and he responded that he understood each right before he signed the waiver. Benoit testified that appellant was coherent and not intoxicated at the time. In his statement to police, appellant agreed that prior to starting the statement he was advised of his rights, that he acknowledged and signed the rights waiver form, that he fully understood his rights, that he was giving the statement under his own free will, and that he had not been mistreated by police. Police also read to appellant the consent form allowing them to search his vehicle and he signed the form.

Appellant quotes in his brief a portion of the motion to suppress hearing in which he testified that Florida police told him they would tell Indianapolis police he was cooperative if he gave a statement. In his brief, however, he does not specifically make the argument that police induced him to confess. Such an assertion would be in direct contravention of Detective Benoit's account of the interview. In such circumstances, we consider the evidence which supports the trial court's ruling and any uncontroverted evidence presented by appellant. *Brown v. State* (1985), Ind., 485 N.E.2d 108.

We find there is substantial evidence of probative value to support the trial court's determination that appellant voluntarily waived his *Miranda* rights. Therefore, appellant's *Miranda* waiver form, confession, and search waiver form were properly admitted into evidence.

■ Appellant contends the trial court erred by not suppressing the testimony of FBI Agent Flynn who interviewed him while he was in the custody of Florida police. Before the interview, Flynn advised him of his *Miranda* rights which appellant again waived. Appellant stated he understood and knew what he was doing and that he was not influenced by any threats or promises. He told Flynn that he previously had been advised of his rights by the Ft. Lauderdale police and that he had been appointed a public defender. Flynn believed appellant when he said he understood his rights.

Appellant asked Flynn questions about the murder in Indiana, such as whether he thought the case could involve the death penalty. Appellant also expressed that the shooting was accidental and he was sorry. Appellant asserts that these inculpatory statements should have been excluded at trial because Flynn failed to re-advise him of his rights prior to the time he made the statements.

Based on the standard set forth in *Patton, supra*, we find that appellant fully understood his rights before his conversation began with Agent Flynn. Appellant cites no authority to support his proposition that Flynn should have, in mid-conversation, re-advised him of his rights simply because appellant shifted the topic of their discussion. We hold that because appellant waived his rights minutes before he made the inculpatory statements, the trial court properly allowed Agent Flynn to testify about these statements.

■ Appellant claims the trial court erred in denying his motion for judgment on the evidence and that the evidence was insufficient to support his conviction. If

the evidence is sufficient to sustain a conviction on appeal, then the denial of a motion for directed verdict cannot be error. In reviewing the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *White v. State* (1986), Ind., 495 N.E.2d 725.

Appellant believes that because all the evidence supporting his conviction is merely circumstantial and because his confession was involuntary, thus inadmissible, the evidence is insufficient to support his conviction.

As we noted above, appellant's confession was properly admitted at trial. The evidence supporting his conviction, in addition to his confession, included an eyewitness's account of the shooting and robbery, and the identification of him at the scene of the crime by another eyewitness. Such direct evidence was sufficient to affirm the trial court's denial of his motion for directed verdict and his conviction.

■ Appellant argues the trial court erred in denying his motion for continuance. The record shows that appellant's counsel filed a motion for continuance eight days before the trial was to begin for the reason that he had insufficient time to prepare a defense. His motion was denied. The day before trial the motion for continuance was renewed and appellant moved to replace his public defender with a private counsel who would accept the case on the condition that a continuance would be granted to allow him to prepare for trial.

The State responded that witnesses had arrived or were scheduled to do so from various parts of the country and that they had difficulty keeping in contact with a witness who was appellant's friend. The prosecutor mentioned that appellant had twelve months to employ private counsel and had changed his theory of defense. The trial court overruled appellant's motion for continuance.

A motion for continuance based upon an alleged need to have more time for trial preparation is a matter of trial court discretion. The granting of continuances in order to allow more time for preparation generally is not favored without a showing of good cause, and only will be granted in furtherance of justice. *Menifee v. State* (1987), Ind., 512 N.E.2d 142; Ind.R.Tr.P. 53.5. Whether good cause has been shown rests within the sound discretion of the trial court and will be disturbed only upon a clear showing of an abuse of discretion. *Bryan v. State* (1982), Ind., 438 N.E.2d 709. To demonstrate an abuse of discretion, the record must reveal that the defendant was prejudiced by the court's failure to grant the continuance. *Spangler v. State* (1986), Ind., 498 N.E.2d 1206.

Considering the length of time before trial and the fact that appellant's counsel was able to interview witnesses before trial, we find no abuse of trial court discretion. Also, appellant has not shown, nor does the record reflect, how he was prejudiced by the denial of his motion for continuance. We find no error.

■ Appellant argues the trial court committed reversible error by admitting into evidence a photograph of himself. He asserts that because the jury could tell the photograph was a "mug shot" they could infer that he had a prior record.

The exhibit consists of a black and white photograph of appellant's face and shoulders. A hole was cut in a piece of cardboard and it was stapled and taped to the photograph so that only appellant's shoulders and head were visible. In the background, the height scale is visible, though no identifying name plate or prisoner number can be seen. At trial, appellant objected to the photograph on the ground that no proper foundation was laid for its admission. Appellant cannot base his current allegation of error on an objection made at trial which bears no relation to his complaint on appeal. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

■ Also, we note that photographs which bear no name, identification number or indication of prior arrests do not fall within the classic definition of "mug shots." *Menifee, supra.* We find no reversible error.

■ Appellant also believes he was denied a fair trial because pre-autopsy photographs of the victim were admitted for the purpose of inflaming the sentiments of the jury.

The admission of photographs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Photographs of a victim's corpse in a homicide case are relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on the cause of death. *Brown v. State* (1987), Ind., 503 N.E.2d 405. Also, photographs showing the victim in his or her natural state following death and before the body has been altered by an autopsy are relevant and admissible. *Loy v. State* (1982), Ind., 436 N.E.2d 1125.

In appellant's case, two color photographs were admitted which showed the victim's head before autopsy. A small wound was visible on the victim's forehead where the bullet entered and his eye was blackened. The photographs were relevant to show the nature of the victim's wounds and were not unduly prejudicial. *Rowan v. State* (1982), Ind., 431 N.E.2d 805. We find no error in their admission.

■ Appellant argues that the trial court did not articulate the aggravating factors to support his increased sentence.

During appellant's sentencing hearing, the trial court stated that in determining the length of the sentence it considered the risk that appellant would commit other crimes, the nature and circumstances of the crimes that were committed, and appellant's character, condition and prior criminal record. Further, the court stated that appellant is in need of correctional treatment that can be provided only by long-term commitment to a penal facility, that the imposition of any kind of a reduced sentence would depreciate the seriousness of the crime, that the aggravating factors far outweigh any mitigating circumstances presented, and that the crimes appellant committed are those which society is demanding be stopped. Also, the court stated its reliance upon the presentence report which was contained in the record. We

find these factors sufficiently support an increased sentence. *Roland v. State* (1986), Ind., 501 N.E.2d 1034.

 Although the issue is not raised by appellant, we *sua sponte* note that appellant was charged, tried, and convicted of murder felony and was also convicted of the robbery which formed the basis for the murder felony charge. The robbery charge merged with the murder felony charge. *Williams v. State* (1978), Ind., 373 N.E.2d 142.

The cause is therefore remanded to the trial court with instructions to expunge the robbery conviction. The trial court is in all other respects affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.