Larry FLAKE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A01–0111–CR–428.

Court of Appeals of Indiana.

May 14, 2002.

E. Thomas Kemp, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Larry Flake ("Flake") was charged with Sexual Misconduct with a Minor as a Class B felony,[1] Sexual Misconduct with a Minor as a Class C felony,[2] and Rape as a Class B felony.[3] A jury returned guilty verdicts on both counts of Sexual Misconduct with a Minor, but could not reach a verdict on the charge of Rape. The trial court declared a mistrial as to the charge of Rape. The jury subsequently found Flake to be a habitual offender. The trial court entered judgment on one count of Sexual Misconduct with a Minor as a Class B felony and adjudicated Flake a habitual offender. Flake was sentenced to twenty-five years imprisonment. We affirm.

---

1. IND.CODE § 35–42–4–9(a)(1).

2. IND.CODE § 35–42–4–9(b)(1).

3. IND.CODE § 35–42–4–1(a)(1).

## Issues

Flake raises three issues on appeal, which we restate as follows:

I.   Whether the trial court erred when it instructed the jury as to its function and power under the Indiana Constitution during the habitual offender phase of the trial;

II.  Whether the trial court erred when it denied Flake's motion to continue the trial; and,

III. Whether the trial court erred when it permitted the State to rehabilitate its witness.

## Facts and Procedural History

The facts most favorable to the verdict are as follows. On November 1, 1999, fifteen-year-old A.B. went outside her apartment at Greenwood Apartments in Richmond, Indiana, to see some friends. A.B. did not see her friends outside, but instead saw Flake. When A.B. began to walk to another apartment building Flake followed her, then grabbed her and forced her into his car.

Once inside the car, Flake commenced sexual contact and intercourse with A.B. After intercourse, Flake unlocked the car door and A.B. returned to her apartment. Upon returning home, A.B. told her mother what happened. A.B.'s mother told her not to shower and called the police. A.B. went to the hospital for treatment. Tests confirmed that semen recovered from A.B. originated from Flake. A.B. subsequently identified Flake from a photo array prepared by the Richmond police. The Richmond police arrested Flake.

On August 15, 2001, Flake filed a motion to continue his trial set for August 28, 2001, because one of his witnesses, Molly Washington ("Washington"), would be recovering from surgery. The trial court denied Flake's motion, reasoning in part as follows:

THE COURT: I believe it's fortunate she has been deposed. It would be my intention that she's unavailable for trial, to permit that deposition to be admitted into evidence. [Defense counsel], if you're not—if you don't feel that deposition contains everything that you would like it to, you should avail yourself of the opportunity between now and trial to depose her yourself.

. . . .

THE COURT: And the fact that her testimony would be cumulative, there's another witness that you intend to produce that can basically testify to the same matter, and apparently Mr. Flake is going to testify as well. So her testimony would be cumulative. That bears on my decision, plus this fact. Mr. Flake has already asked for five continuances. This case is over a year and a half old. It concerns allegations against a child. We're at risk of having memories fade, appearances change. I'm concerned about getting this case to trial and getting it resolved.

(Tr. 10–11.)

Flake appeals the trial court's judgment. Additional facts are supplied as needed.

## Discussion and Decision

### I. Habitual Offender Instruction

Flake contends that the trial court failed to properly instruct the jury during the habitual sentencing phase of the trial. Specifically, Flake argues that the trial court's instructions inhibited the jury from exercising its constitutional right to determine both the law and the facts. We disagree.

#### Standard of Review

■ Instructing the jury lies within the sole discretion of the trial court. *Ed-*

*gecomb v. State,* 673 N.E.2d 1185, 1196 (Ind.1996). When reviewing the propriety of the trial court's decision to refuse a tendered instruction, this Court must consider the following: 1) whether the instruction is supported by the evidence in the record; 2) whether the instruction correctly states the law; and 3) whether other instructions adequately cover the substance of the denied instruction. *Hanson v. State,* 704 N.E.2d 152, 156 (Ind.Ct.App. 1999). Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Edgecomb,* 673 N.E.2d at 1196. Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. *Hollowell v. State,* 707 N.E.2d 1014, 1023 (Ind.Ct.App.1999).

### Rule of Law

■ Article I, § 19, of the Indiana Constitution reads as follows:

In all criminal cases whatever, the jury shall have the right to determine the law and the facts.

Our supreme court applied this fundamental principle within the realm of habitual offender instructions in both *Seay v. State,* 698 N.E.2d 732 (Ind.1998) and *Parker v. State,* 698 N.E.2d 737 (Ind.1998).

[E]ven where the jury finds the facts of the prerequisite prior felony conviction to be uncontroverted, the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender of law.

*Seay,* 698 N.E.2d at 734. However, an instruction which minimizes the jury's power of discretion in making a determination on habitual offender status does not necessarily amount to reversible error, if accompanied by another instruction informing the jury that it is the judge of the law and the facts. *Parker,* 698 N.E.2d at 742.

### Analysis

The trial court gave the following habitual offender instruction:

To have the defendant adjudged a habitual offender, the State must have proved each of the following elements:

That the defendant:

1. Was convicted of the crime of child molesting, a class B felony for which he was sentenced on or about September 9, 1980.

2. Was convicted of the crime of sexual battery, a class D felony, for which he was sentenced on or about March 22, 1989, and that this crime of sexual battery was committed after sentencing for the class B felony on September 9, 1980.

3. Committed the crime of which he was convicted in this cause after March 22, 1989.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not to be a habitual offender, and the form of your verdict should be:

"We, the jury, find the defendant, Larry Flake, is not a habitual offender."

*If the State did prove each of these elements beyond a reasonable doubt, then the State has proven the defendant to be a habitual offender.* The proper form of a verdict finding the defendant to be a habitual offender would be:

"We, the jury, find the defendant, Larry Flake, was convicted of two (2) prior unrelated felonies and is a habitual offender."

(App. 324.) (Emphasis added.) Flake argued that the above italicized language

created a presumption in violation of the case law contained in *Seay* and *Parker*. We agree.

In *Seay*, our supreme court held that the trial court erred when it instructed the jury that it was the judge only of the facts, and that it was restricted to determining the facts only and not the law. *Seay*, 698 N.E.2d at 737. Nevertheless, our supreme court summarily adopted this Court's determination that the giving of the instruction did not amount to reversible error. *Id.; See Seay v. State*, 673 N.E.2d 475, 480 (Ind.Ct.App.1996) (holding in part that the habitual offender instructions did not make it impossible for Seay to receive a fair trial.) In *Parker*, our supreme court vacated a habitual offender determination holding that the trial court erred when it instructed the jury that if it found that the State had proved the predicate felonies, then it "should" find defendant to be a habitual offender. *Parker*, 698 N.E.2d at 737. The habitual offender instruction presently before us is similarly misleading.

■ Here, however, the errant habitual offender instruction was accompanied by the following instruction:

> Under the Constitution of the State of Indiana the jury is given the right to determine both the law and the facts. The instructions of the Court are your best source in determining the law.

(App. 322.) This instruction clearly expressed the dictates of Article I, § 19, of the Indiana Constitution. Accordingly, the entire habitual offender jury charge did not prevent the jury from exercising its constitutional discretion and no reversible error took place.

## II.  Motion to Continue

Flake further contends that the trial court prejudiced his defense when it denied one of his motions to continue, effectively preventing defense witness Washington from testifying. We disagree.

### Standard of Review

■ The standard of review for a trial court's ruling on a continuance not required by statute is abuse of discretion.[4] *Carter v. State*, 686 N.E.2d 1254, 1261 (Ind.1997). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance. *Anderson v. State*, 695 N.E.2d 156, 157 (Ind.Ct.App.1998). We will not disturb the trial court's decision absent a clear demonstration that the trial court abused its discretion. *Arhelger v. State*, 714 N.E.2d 659, 665 (Ind.Ct.App.1999).

### Analysis

■ Flake's reliance on *Vaughn v. State*, 590 N.E.2d 134 (Ind.1992) is misplaced. In *Vaughn*, our supreme court reversed a defendant's convictions for burglary, theft, and forgery because the trial court denied a motion to continue which precluded the only defense witness from testifying at trial. Here, however, Washington's deposition was read in full, including her observations of the events that transpired on the night of November 1, 1999. Moreover, Sheila Smith, the business acquaintance who had accompanied Washington on November 1, 1999, testified on behalf of the defense regarding the events of that evening at trial. As such, the absence of Washington's testimony was not of "crucial importance" and the trial court's decision to deny Flake's fifth

---

4. Flake concedes that the absence of witness Washington did not satisfy the statutory criteria of Indiana Code section 35–36–7–1.

motion for continuance was not an abuse of its discretion. *Vaughn,* 590 N.E.2d at 136.

### III. Rehabilitating a Witness

Lastly, Flake argues that the trial court erred when it allowed the State to rehabilitate its witness, A.B. Specifically, Flake complains of two instances in which A.B. testified, was impeached, and then rehabilitated by the State. The first instance of contention concerned the point at which A.B. allegedly told Flake her age, and the second was whether or not Flake lifted A.B.'s shirt and touched her breast.

### Standard of Review/Rule of Law

■ We will reverse a trial court's decision regarding the admission or exclusion of evidence only for an abuse discretion. *Parmley v. State,* 699 N.E.2d 288, 292 (Ind.Ct.App.1998). An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.*

Indiana Rule of Evidence 801(d)(1), provides as follows:

**(d) Statements Which are Not Hearsay.** A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition; or (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose; or (C) one of identification of a person made shortly after perceiving the person

. . .

However, "[b]ecause Rule 801(d) speaks only to the admission of prior consistent statements for their substance, we must look to pre-rule cases for the relevant common law on the rehabilitative use of these statements." *Moreland v. State,* 701 N.E.2d 288, 292 (Ind.Ct.App.1998). "Many pre-rules cases stated that prior consistent statements were admissible to rehabilitate witnesses." *Id.*

### Analysis

At trial, A.B. testified in part as follows:

Q [State]: What, if anything, did you tell the defendant about being a virgin?

A [A.B.]: I did.

Q: Okay. Tell the jury what you told him about that.

A: *Told him I* was a virgin and *I was only fifteen.*

. . . .

Q: Okay, *when did you tell him?*

A: *When he started*—when he started doing—he was doing.

(App. 407.) (Emphasis added.) On cross-examination, Flake's defense attorney sought to impeach A.B. by referencing her responses in a statement given to police a week after the alleged misconduct.

Q: [Detective Raver] asked you, "Did you tell him your age?", is that correct?

A: Yes.

Q: And you told Detective Raver, "Yeah, 'cause he asked me and I told him I was fifteen." Do you remember that?

A: Yes.

Q: And Detective Raver asked you, "Well, when did he say—say that? *When did he ask you that?* " Do you remember your response?

A: Yes.

Q: *"When he got done,* while he was unlocking the door. He asked me and I told him I was fifteen." Is that correct?

A: Yes.

(App. 410–11.) (Emphasis added.) Thereafter, over Flake's objection, the State was permitted to rehabilitate A.B.'s testimony on re-direct, referencing her testimony from a previous deposition.

Q: Question, "... when did [the defendant ask you how old you were] ...?"

A: "Before when we were getting— when he was getting on top of me that's when he asked me how old I was."

(App. 415.)

The above scenario repeated itself with A.B.'s testimony at trial that Flake had lifted her shirt and touched her breast. On direct examination, A.B. testified as follows:

Q: Tell the jury what [Flake] did to you after he leaned the seat back.

A: He had pulled down my shorts and lifted up my shirt and was rubbing on one of my breasts ...

(App. 406.) On cross-examination, A.B. stated:

Q: [In your deposition] I asked you if you were wearing a bra, your response?

A: "Yes."

Q: I asked ... if he pulled up your bra. And your response?

A: "No."

(App. 408.) Again, the State was permitted, over Flake's objection, to introduce prior consistent statements. This time the prior consistent statements came from a previous statement to police.

Q: [A.B.], [Detective] Raver asked you again, "Tell me what he did with your clothes.", and what was your answer?

A: "He pulled my shorts down and pulled up my top, lifted one side of my bra and started rubbing on—on me."

(App. 417.)

In *Moreland,* the trial court allowed the State to rehabilitate its witness, an alleged child molestation victim, following a cross-examination that created numerous inconsistencies between the victim's trial testimony and deposition testimony. In its effort to rehabilitate its witness, the State was permitted to call to the stand a social worker and police detective. These witnesses testified as to what the victim told them had occurred between her and the defendant. On appeal, we held that since the defense's theory was that the victim "had been lying the entire time" there was no "recent fabrication," and therefore meeting the rigors of Indiana Rule of Evidence 801(d)(1) was not necessary to give rise to admissible evidence. *See Moreland,* 701 N.E.2d at 292; Evid.R. 801(d)(1)(B). Rather, the State's efforts were better characterized as the introduction of prior consistent statements to rehabilitate a witness.

■ In reaching our holding in *Moreland,* we relied on such case law as *Patterson v. State,* 563 N.E.2d 653 (Ind.Ct.App. 1990), stating:

[I]n *Patterson* ..., the defendant offered evidence that the child victim in a molestation case had recanted her accusation against him. The State then introduced the victim's statements to her mother and a police detective to show the consistency of the victim's accusations against the defendant. Noting that testimony which rehabilitates a witness who has made prior inconsistent statements may be relevant and admissible, we held that the statements were properly admitted for rehabilitative purposes.

*Moreland,* 701 N.E.2d at 292. Here, the defense's theory from the beginning was that A.B. willingly went with Flake and informed him of her age after engaging in sexual relations. Thus, as in *Moreland,* there was no "recent fabrication." Moreover, this case is akin to the testimonial fact pattern of such pre-evidentiary rules cases as *Patterson,* wherein the additional testimony was allowed. As such, Indiana Rule of Evidence 801(d)(1) need not have been applied and the trial court did not abuse its discretion by permitting the rehabilitation of A.B.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.