# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 18 2017, 10:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan Lee Jordan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 18, 2017 <br><br> Court of Appeals Case No. <br> 79A05-1706-CR-1285 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Steven P. Meyer, Judge <br><br> Trial Court Cause No. <br> 79D02-1608-F2-21 |

**May, Judge.**

[1] Bryan Lee Jordan appeals the trial court's denial of his motion for continuance and challenges the sufficiency of evidence supporting his conviction of Level 2 felony possession of at least ten grams of methamphetamine with the intent to deliver.[1] We affirm.

## Facts and Procedural History

[2] On July 30, 2016, officers were dispatched to the home of Jamie Rowland on a complaint that her ex-boyfriend was attempting to enter her residence. Tippecanoe County Sheriff's Deputy Dustin Oliver arrived at the home and observed a man in the driveway, later identified as Jordan, astride a motorcycle parked next to a car.[2] As Deputy Oliver walked toward the residence, Jordan "got off of the motorcycle and took a backpack off of his back and placed it in the vehicle that was sitting next to the motorcycle[.]" (Tr. at 29.) Tippecanoe County Sheriff's Lieutenant John Ricks arrived around the same time, but approached from a different angle. He, too, saw Jordan "open[] the driver's side door and set the back pack in the driver's seat of that passenger car." (*Id.* at 63.)

[3] When the officers checked the plates of the motorcycle, the "plate returned on a blue Yamaha." (*Id.* at 65.) Lieutenant Ricks provided the vehicle identification

---

[1] Ind. Code § 35-48-4-1.1 (2016).

[2] The car was later identified as an Impala belonging to Rowland.

number "to dispatch so that they could run it[.]" (*Id.* at 66.) Dispatch replied the motorcycle had been reported stolen. At that point, Deputy Oliver attempted to place Jordan under arrest, but Jordan resisted. Eventually, Deputy Oliver was able to effectuate the arrest. However, during the struggle, several items fell out of Jordan's pockets, including the keys to the motorcycle. Lieutenant Ricks asked Rowland if the backpack belonged to her but she said it did not. Lieutenant Ricks emptied the backpack and found methamphetamine, marijuana,[3] a glass pipe, a torch, two digital scales, a baggy, a switch blade knife, and various toiletries.

[4] The State charged Jordan with Level 2 felony dealing in methamphetamine, Level 4 felony possession of methamphetamine,[4] Class B misdemeanor possession of marijuana,[5] Class C misdemeanor possession of paraphernalia,[6] Level 6 felony auto theft/receiving stolen auto parts,[7] Class A misdemeanor resisting law enforcement,[8] and a habitual offender enhancement.[9]

---

[3] Lab tests confirmed the substances were 12.85 grams of marijuana and 13.15 grams of methamphetamine.

[4] Ind. Code § 35-48-4-6.1 (2014).

[5] Ind. Code § 35-48-4-11 (2014).

[6] Ind. Code § 35-48-4-8.3 (2015).

[7] Ind. Code § 35-43-4-2.5 (2014).

[8] Ind. Code § 35-44.1-3-1 (2016).

[9] Ind. Code § 35-50-2-8 (2015).

[5] The court assigned a public defender to Jordan in August 2016 and set the matter for a jury trial on December 13, 2016. On December 30, 2016, the jury trial was reset to April 11, 2017. After a pretrial conference on March 17, 2017, the trial court called the jury on March 20, 2017. On March 24, 2017, Jordan filed a motion to continue. Jordan contended he wished to hire Caroline Briggs as private counsel but Briggs was not available to try the case on April 11, 2017.

[6] The trial court held a hearing on Jordan's motion to continue. Jordan's public defender and Briggs argued the State would be filing charges against Jordan for a separate incident, and Jordan wished to hire Briggs "to figure out what those charges are in dealing with a plea or potential plea [and] deal with all of his cases at once." (*Id.* at 9.) The State objected to the motion to continue. It argued the April 11 date had been "acknowledged for jury trial[,]" (*id.* at 6), witnesses had already been subpoenaed, and Jordan had been "informed [at the pretrial conference] that if he hired private counsel that whoever he hired needed to be prepared to go to trial on the April 11th trial date." (*Id.*) The trial court told Jordan he could hire private counsel, but it denied his motion to continue. Briggs did not enter her appearance for Jordan.

[7] The jury found Jordan guilty on all counts. Based on double jeopardy concerns, the trial court vacated the Level 4 felony possession of methamphetamine charge and sentenced Jordan to twenty years for the Level 2 felony dealing in methamphetamine, which it enhanced by six years for Jordan's being an habitual offender. The court ordered Jordan to serve 180 days for Class B misdemeanor possession of marijuana, sixty days for Class C

misdemeanor possession of paraphernalia, two years for Level 6 felony auto theft, and one year for Class A misdemeanor resisting law enforcement, and the court ordered all of those sentences to be served concurrent with each other and with the Level 2 felony sentence. Thus, Jordan's aggregate sentence is twenty-six years.

# Discussion and Decision

## Denial of Motion to Continue

### *Whether the Trial Court's Denial of Jordan's Motion for Continuance Was an Abuse of Discretion*

[8] When, as here, a party moves for a continuance not required by statute,[10] we review the trial court's decision for abuse of discretion. *Flake v. State,* 767 N.E.2d 1004, 1008 (Ind. Ct. App. 2002). "An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance." *Id.* Continuances to allow more time for preparation are generally disfavored in criminal cases. *Risner v. State,* 604 N.E.2d 13, 14 (Ind. Ct. App. 1992), *trans. denied.*

[9] The parties attended a pretrial conference on March 17, 2017, wherein both acknowledged the trial date of April 11, 2017. This acknowledgment assured

---

[10] Neither party contends Jordan's motion for continuance was pursuant to statute.

the trial court the trial was going to occur and, based thereon, the trial court issued an "Order to Call Jury." (App. Vol. II at 5.) On March 24, 2017, Jordan filed a motion for continuance, and the trial court held a hearing on the motion that day. Jordan's attorney argued the motion should be granted because Jordan wished to hire Caroline Briggs, who was unavailable for trial on April 11, 2017. Further, he argued more charges were being brought against Jordan, and Briggs wanted to be able to "deal with all of his cases at once." (Tr. at 9.)

[10] The State objected because the trial date had been acknowledged by the parties, subpoenas had been issued for witnesses, and the jury had been called. Additionally, the State argued "the court had told [Jordan] on at least one occasion that once the case [was] acknowledged for trial he needed to be prepared to go." (*Id.* at 7.) The trial court denied the motion for continuance but told Briggs she was welcome to enter her appearance.

[11] Jordan has not professed any prejudice resulted from the denial of his motion for continuance as required by the standard of review. See *Flake,* 767 N.E.2d at 1008 (on appeal, appellant must demonstrate prejudice from the denial of the continuance). We conclude the trial court did not abuse its discretion in denying Jordan's motion for continuance after he had acknowledged the trial date. *See Lewis v. State*, 730 N.E.2d 686, 690 (Ind. 2000) (court did not err in denying continuance when "time of dozens of prospective jurors summoned for the trial would have been wasted").

### *Whether the Trial Court's Denial of Jordan's Motion for Continuance Amounted to a Violation of Jordan's Constitutional Rights*

[12] The Sixth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, guarantees the accused, in a criminal prosecution, shall "have the Assistance of Counsel for his defence." U.S. Const. Amendment VI. Such a right to counsel of choice "has been described as an 'essential component' of the Sixth Amendment right to counsel[.]" *Barham v. State*, 641 N.E.2d 79, 82 (Ind. Ct. App. 1994). A denial of this right is reviewed to determine if the trial court acted unreasonably and arbitrarily. *Id.* However, this right is not absolute and the right must be exercised at the appropriate stage. *Lewis,* 730 N.E.2d at 689. "Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers and the court." *Perry v. State*, 638 N.E.2d 1236, 1241 (Ind. 1994).

[13] Jordan argues the trial court unreasonably and arbitrarily interfered with his Sixth Amendment right to retain counsel of choice when it denied his motion for continuance.[11] He asserts these "charges had been pending for only a period of approximately eight months[,]" (Appellant's Br. at 13), and the State "did not cite to any specific reason why prejudice would follow if a continuance was granted." *Id.* He claims this denial "effectively prevented [him] from proceeding to trial with counsel of his own choosing." (*Id.*) The State counters

---

[11] Jordan does not make an Indiana Constitutional argument.

that although Jordan's motion for continuance was not as close to trial as many other cases wherein a denial of the continuance was deemed appropriate, Jordan had eight months to hire private counsel, he was represented by counsel at trial, and he does not show how the court's ruling denied him a fair trial.[12]

[14] In *Barham*, five days before trial, new counsel for Barham filed an appearance and a motion for continuance so she could prepare for trial. *Barham*, 641 N.E.2d at 81. As the trial court had previously told Barham any new attorney would have to be ready to for the previously scheduled trial, the trial court denied her appearance and her motion for continuance. *Id.* Although prejudice must be shown if a request is not filed in a timely fashion, we held it was not necessary to show prejudice for a timely request because the "requirement of a showing of prejudice is inextricably bound to the untimeliness of a request." *Id.* at 83 n.6. As Barham's counsel had offered to act as co-counsel to the public defender, she had "indicat[ed] that she could have been prepared for trial on the scheduled date." *Id.* at 84. We held that, in that situation, the trial court's denial of private counsel's appearance was an unreasonable and arbitrary interference with Barham's right to retain counsel. *Id.* at 84-85. However, in the present case, the trial court did not deny Briggs' appearance. It only denied Jordan's motion for continuance.

---

[12] Jordan does not claim he was prejudiced by the denial of his motion. Rather, he asserts that if the trial court "unreasonably or arbitrarily interfere[d] with the right to retain counsel of choice, [the conviction] cannot stand, irrespective of whether the defendant has been prejudiced." (Appellant's Br. at 12-13) (*citing Barham v. State*, 641 N.E.2d 79, 82 (Ind. Ct. App. 1994)).

When reviewing denials of motions for continuance tied to prospective counsel's appearance, we have distinguished *Barham* from other cases wherein counsel's appearance was denied if it was contingent on a continuance. In *Dickson v. State*, 520 N.E.2d 101 (Ind. 1988), Dickson's public defender filed a motion for continuance eight days prior to trial because "he had insufficient time to prepare a defense." *Id.* at 105. One day prior to trial, Dickson filed another motion for continuance and moved to replace his public defender with private counsel. *Id.* The replacement by private counsel was contingent on the motion for continuance being granted. *Id.* The State objected because "witnesses had arrived or were scheduled to do so from various parts of the country[,]" *id.*, one witness was difficult to keep track of, and Dickson had had "twelve months to employ private counsel[.]" *Id.* The trial court denied the motion for continuance. *Id.* We found no abuse of discretion in the denial of continuance due to "the length of time before trial and the fact that appellant's counsel was able to interview witnesses before trial[.]" *Id.* As Dickson did not show he was prejudiced by the denial of the motion, we found no error. *Id.*

We find the present case to be more analogous to *Dickson*. The result in *Barham*, on which Jordan relies, rests on the denial of Barham's prospective counsel's appearance rather than the denial of his motion for continuance. Herein, the trial court did not deny the appearance of Jordan's private counsel, Briggs. Although Jordan's motion for continuance was not filed on the day of or the day before trial, his private counsel made her appearance contingent on the grant of the motion for continuance, the case had been pending for eight

months, witnesses had been subpoenaed, and the jury had been called. Jordan had been told that after the trial date was acknowledged, any new counsel would need to be prepared to try the case on the scheduled date. During the hearing for the motion for continuance, the State noted Jordan's trial "was the only case that acknowledge [sic] for trial on the April 11ᵗʰ trial date so if his case gets continued [the court] won't have a trial that week[.]" (Tr. at 6.) We do not find the trial court acted unreasonably or arbitrarily when it denied Jordan's motion for continuance.[13] *See Dickson*, 520 N.E.2d at 105 (no error when witnesses scheduled, case had been pending for twelve months, and no prejudice); *see also Conrad v. State*, 747 N.E.2d 575, 585 (Ind. Ct. App. 2001) (trial court did not act unreasonably when it denied a motion for continuance after the case had been scheduled for five months), *superseded by statute on other grounds*.

## *Sufficiency of Evidence*

[17] When reviewing the sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the

---

[13] We also note that because Jordan was warned that any prospective counsel would need to be prepared for the April 11, 2017, trial once it had been acknowledged, his motion for continuance was not timely; thus, he would need to show prejudice in order to prevail. As we noted, Jordan does not argue that he was prejudiced. *See supra* n.12. We decline to scour the record for such evidence on Jordan's behalf. *See Legacy Healthcare, Inc. v. Barnes & Thornburg*, 837 N.E.2d 619, 639 (Ind. Ct. App. 2005) (appellate court does not search the record for evidence), *reh'g denied, trans. denied*.

evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the fact-finder's decision. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the fact-finder's decision. *Id.* at 147.

To prove Jordan intended to distribute at least ten grams of methamphetamine, the State had to prove he "possesse[d], with intent to . . . deliver[,] methamphetamine, pure or adulterated [and] the amount of the drug involved [wa]s at least ten (10) grams." Ind. Code §§ 35-48-4-1.1(a)(2) & (e) (2016). The State presented evidence Jordan had a large amount of cash, scales, and more than ten grams of methamphetamine.

"Intent is a mental function[.]" *Isom v. State*, 589 N.E.2d 245, 247 (Ind. Ct. App. 1992), *trans. denied*. Without an admission, "the trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences thereof, a showing or inference of intent to commit that conduct exists." *Id.* Intent may be proven by circumstantial evidence. *Mason v. State*, 532 N.E.2d 1169, 1171 (Ind. 1989), *cert. denied* 490 U.S. 1049 (1989). "The possession of a large amount of narcotics is circumstantial evidence of intent to deliver." *Id.*

[20] Jordan argues it was possible the full amount of methamphetamine he possessed was for personal use. He argues that, contrary to caselaw, the State should be required to prove "that a person must possess with the intent to deliver – *and* the amount of the drug involved must be at least ten grams[.]" (Appellant's Br. at 17) (emphasis in original). He argues our holding in *Bookwalter v. State*, 22 N.E.3d 735 (Ind. Ct. App. 2014), *trans. denied*, was "simply incorrect." (Appellant's Br. at 17.)

[21] In *Bookwalter*, we held the enhancement requiring the amount of the drug be more than three grams was a separate subsection of the statute and did not "require proof of intent to deliver a specific weight of drugs." *Bookwalter*, 22 N.E.3d at 742. Consequently, the State was not required to prove Bookwalter actually delivered any specific amount of drugs; rather, it was only required to prove he possessed a specific amount of drugs. Therefore, we affirmed Bookwalter's conviction.

[22] We have held "that possession of a large amount of a narcotic substance is circumstantial evidence of intent to deliver." *Cline v. State*, 860 N.E.2d 647, 650 (Ind. Ct. App. 2007); *see also Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003) ("The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally."), *trans. denied.* We acknowledged, in *Cline*, that even a large amount of drugs, if packaged for personal use, does not establish intent to deliver. *Cline*, 860 N.E.2d at 650. Cline was charged with dealing marijuana. We also held "that possession of paraphernalia used to ingest the controlled substance at issue is more likely

indicative of personal use than intent to deliver." *Id.* However, in *Cline*, that is all he had: a pipe, rolling papers, a bag of marijuana, and "two bindles of methamphetamine." (*Id.* at 648.) We held that if Cline had not actually delivered the marijuana to a third party, the evidence alone would not have supported his conviction.

Jordan did possess paraphernalia to ingest the methamphetamine but he also possessed a large amount of the drug, scales to weigh it, a large amount of cash, and at least one other empty baggie. The jury could reasonably infer he had intent to deliver. *See Hazzard v. State*, 642 N.E.2d 1368, 1370 (Ind. 1994) (possession of a relatively large quantity of drugs was sufficient to support the fact-finder's conclusion the individual possessing that quantity intended to deliver it). Jordan's arguments to the contrary are a request that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

The trial court did not abuse its discretion when it denied Jordan's motion for continuance and did not unreasonably or arbitrarily interfere with his ability to retain counsel of choice. The State presented sufficient evidence Jordan intended to deliver methamphetamine. Accordingly, we affirm.

Affirmed.

Vaidik, C.J., and Altice, J., concur.