Johnny COLLINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 879S220.

Supreme Court of Indiana.

Dec. 15, 1980.

Bruce S. Cowen, Deputy Public Defender, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Johnny Collins, was charged with murder in violation of Ind.Code § 35–42–1–1(1), in the shooting death of James Harold Craig, Jr.  He was convicted in a

trial by jury and sentenced to a fifty year term of imprisonment. Appellant presents three issues in this his first and direct appeal, namely:

(1) whether the evidence was sufficient to support the conviction, and

(2) whether error occurred when the trial court permitted certain witnesses for the State to testify despite the fact that they did not attend a line–up as ordered by the court, and

(3) whether the court committed error in denying a defense motion for continuance.

■ In resolving the question of the sufficiency of the evidence serving to identify appellant as the perpetrator of this offense, we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657. So viewed the evidence presented showed the following.

The appellant confronted a former girlfriend, Adell Gladney, at her home on March 18, 1978. He was angry that she had not driven to a local hospital from which he had been released to pick him up as he requested her to do. During this confrontation appellant struck Ms. Gladney several times until she scratched him on the face. After she had scratched him appellant went to look in a mirror, and while he was doing so Ms. Gladney ran to her boyfriend's house. Appellant followed Ms. Gladney but was told to leave by Ms. Gladney's boyfriend, James Craig, the victim in this case.

Mr. Craig went with Ms. Gladney when she returned to her house. Appellant had locked himself inside and demanded to speak to Ms. Gladney. When Ms. Gladney told appellant that she loved Mr. Craig he threatened to kill her.

Later, during the evening of March 18, 1978, appellant and his brother picked up Ernestine Bryant at a local hangout called the T & T and then went to another bar called the Peacock Lounge. At that bar the defendant saw Adell Gladney and James Craig. Appellant went up to Ms. Gladney and told her he still wanted to talk to her; when she ignored him and continued to dance he pushed her. At this point Mr. Craig hit appellant.

Appellant's brother pulled out a gun and shot Mr. Craig. Mr. Craig was not seriously wounded and was driven to Parkview Hospital where he was admitted.

After the shooting appellant and Ernestine Bryant looked for appellant's brother. They went back to the T & T bar where Ms. Bryant overheard the defendant threatening to get "that black nigger" and asked various people what Mr. Craig's last name was.

Appellant had Ms. Bryant call Parkview Hospital to see if Mr. Craig was a patient there and ask what room he was in.

Appellant got a change of clothes at about 5:00 a. m. and had Ms. Bryant drive him to Ms. Gladney's house. He broke into it and while there had a gun with which he shot up several rooms. He then left that place and had Ms. Bryant drive him to Parkview Hospital. She waited for him in the car while he went into the hospital. At about 6:00 a. m. Mr. Craig was shot to death in his room in the hospital by a black man. Appellant returned to the car outside and said to Ms. Bryant, "You should have seen how the black nigger was jumping in the bed" and "Get me out of here." Shortly thereafter appellant burned the clothing he had been wearing.

There is no testimony presented by anyone present in the hospital at the time and place of the shooting of Craig that appellant shot Craig. The evidence connecting appellant with the crime is totally circumstantial. Circumstantial evidence is no different from other evidence for sufficiency purpose, and standing alone may sufficiently support a conviction. *Mitchell v. State*, (1977) 266 Ind. 656, 366 N.E.2d 183.

From an assessment of the evidence the jury could have inferred that appellant left the car outside the hospital with knowledge of the number of the room in which Craig was located and a desire to kill him for felt grievances. It could have further inferred that appellant was armed, went to the room in which Craig lay and there shot and killed him. He then left the hospital and returned to the car, and shortly thereafter burned the clothing that he had been wearing in order to avoid detection. The evidence serving to identify appellant as the person killing Craig was sufficient.

Appellant on the morning his trial was scheduled to commence personally requested a continuance to employ a private attorney. The motion was denied. At the time he was represented by a public defender who had been appointed for that purpose on November 13, 1978, three months before trial. Prior to that appellant was without counsel for one month. During that month he had time to arrange for private counsel. Prior to that one month period appellant had been represented by private counsel continuously for six months. That private counsel had resigned from the case.

One week before the trial was scheduled to commence, a private attorney different from the one who had previously represented him spoke casually with the trial judge and said that he had been asked by appellant's family to represent him, but would not do so unless the court would grant a continuance. The judge responded that no continuance would be granted.

Appellant had several months in this case in which to employ an attorney of his own choice to conduct his defense. He did not avail himself of this opportunity. He waited instead until shortly before the trial was scheduled, at a point in time when the employment of new counsel would frustrate the trial. Appellant "failed to exercise the right to select his own counsel at an appropriate stage of the proceeding." *Atkins v. State*, (1977) Ind.App., 370 N.E.2d 985. Adequate time was afforded appellant to exercise his right to employ counsel of his own choice. When appellant made his pro se motion for a continuance, the public defender had been making preparation for the defense for three months. There was therefore a rational basis for the trial court's ruling.

In his oral motion for a continuance, appellant stated to the court that he had lost faith in his court appointed counsel, because counsel had told him that there was no way he could successfully defend appellant and that appellant was probably facing thirty to forty years. This statement of appellant was not made under oath, but if considered substantially true, it would not require the trial judge to grant the motion. If motions for continuances on the morning of trial were required to be granted on this basis, the State would have a difficult time indeed in getting criminal cases to trial. The statement is more properly viewed as being one factor to be considered by the judge along with many others bearing upon the ruling.

Appellant sought and received court sanction for a pre–trial line–up at which several prosecution witnesses would appear and view appellant and others in the usual fashion. The procedure did not take place. Appellant claims that the police were responsible for the frustration of this procedure, and that therefore the trial court was in error in overruling his trial objection to the testimony of these witnesses. Assuming without deciding, that the ruling was error, it was harmless. None of the witnesses subject to the order was able to identify appellant. The purpose of the line–up was to fairly arrange the first physical confrontation between appellant and the witnesses, so as to reduce the possibility that their in–court identification testimony would be the product of the suggestiveness of the trial itself. As this case turned out, there was no need for the protection provided by the court order.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.