**Mark LEWIS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S00–9904–CR–241.

Supreme Court of Indiana.

June 28, 2000.

pared to subsequent amounts due.

Patricia Caress McMath, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Mark Lewis was convicted of murder, felony murder, and three counts of attempted robbery. In this direct appeal Lewis contends that (1) he was deprived of his right to counsel of his choice when the trial court denied his motion for continuance to hire private counsel on the morning of trial; and (2) the trial court erred in admitting an x-ray that was not properly authenticated. We affirm the trial court.

## Factual and Procedural Background

In the early morning hours of February 6, 1998, Demiris Kerr, Shawn Tyler, and

James Phillips were sleeping in the living room of a home in Indianapolis when two men with bandanas over their faces broke into the house. The intruders were carrying guns and one announced a robbery. Kerr identified one of the intruders as Lewis. While the two intruders were in the house, a shotgun blast came through a window and more shots were fired from outside as the shooter moved to other windows. Lewis was struck in the arm and leg by the shotgun. As Lewis and the other intruder fled the house, Lewis fired two shots. One of these struck Tyler, killing him.

Lewis and two other men were charged with several counts and tried separately. A jury convicted Lewis of murder, felony murder, and three counts of attempted robbery. The trial court merged the murder and felony murder counts and sentenced Lewis to fifty-five years for murder to be served concurrently with ten years on each attempted robbery count.

## I. Denial of Continuance to Retain Private Counsel

■ Lewis contends that the trial court violated his right to counsel of his choice by denying a motion for continuance to hire private counsel on the morning of trial. Lewis was arrested on May 10, 1998, and at his May 12 initial hearing stated that he intended to hire private counsel. A public defender was appointed three weeks later, and despite three continuances, Lewis never retained private counsel in the ensuing eight months. On the morning of trial, the trial court stated that Lewis' case was the oldest case with an individual in custody set for trial on that day and asked whether the parties were ready for trial. The deputy prosecutor stated that she was ready for trial, and Lewis' public defender also stated she was

ready but requested a continuance "on behalf of Mr. Lewis." She explained that Lewis was "under the belief that he will be able to retain different counsel" and that as of the preceding Friday afternoon she and Lewis "were not communicating very well." Lewis then expressed dissatisfaction with his public defender, but after a brief colloquy the trial court stated that Lewis' public defender

has been a defense counsel for quite sometime. I've had cases with her where she's presented jury trials in front of me, and I find that she has performed very competently and professionally. Therefore, her telling me she's ready for trial, I'm going to trust her as an officer of this court and we're going to go to trial today.

The trial court then went off the record in Lewis' case to continue the other cases set for trial on that day. Upon reconvening Lewis' case the trial court engaged in a brief exchange with a private attorney who had appeared on Lewis' behalf. The attorney stated that he would not enter an appearance unless a continuance was granted. Because he had been informed that a continuance had already been denied, he stated that he was going to leave. The trial court observed that Lewis had been in custody for more than eight months and could have hired private counsel during that time; there had been two previous continuances of the case at Lewis' request; and defense counsel stated she was prepared to go to trial that morning. The trial court reaffirmed its denial of Lewis' motion for continuance.

■ The Sixth Amendment guarantees a criminal defendant's right "to have the assistance of counsel for his defense." [1] A corollary of this right is the right to

1. Lewis also notes that Article I, Section 13 of the Indiana Constitution guarantees a criminal defendant's right "to be heard by himself and counsel." Although he observes that the state constitutional right attaches earlier than under the Sixth Amendment right, *see Taylor v. State*, 689 N.E.2d 699, 703–04 (Ind.1997),

he does not suggest that the standard under the state constitution is any higher than under the federal constitution. Indeed, he urges that the same standard should apply. Accordingly, we address the claim under the Sixth Amendment.

choose counsel when a defendant is financially able to do so. *See Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *cf. Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ("The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). However, the right to counsel of choice is not absolute. *United States v. Richardson,* 894 F.2d 492, 496 (1st Cir.1990). It is well settled that the right to counsel of choice must be exercised "at the appropriate stage of the proceeding." *Parr v. State,* 504 N.E.2d 1014, 1016 (Ind.1987) (quoting *Morgan v. State,* 397 N.E.2d 299, 300 (Ind.Ct.App.1979)); *Collins v. State,* 274 Ind. 619, 623, 413 N.E.2d 264, 267 (1980) (quoting *Atkins v. State,* 175 Ind. App. 230, 235, 370 N.E.2d 985, 989 (1977)). As this Court observed in *Perry v. State,* 638 N.E.2d 1236, 1241 (Ind.1994), "[c]ontinuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for ju-

rors, lawyers, and the court." Indeed, this Court has held a number of times that it is within a trial court's discretion to deny a last-minute continuance to hire new counsel. *See id.* (one day before trial); *Beadin v. State,* 533 N.E.2d 144, 145–46 (Ind.1989) (two days before trial); *Dickson v. State,* 520 N.E.2d 101, 105 (Ind.1988) (one day before trial); *Vacendak v. State,* 431 N.E.2d 100, 104–05 (Ind.1982) (morning of trial); *Collins,* 274 Ind. at 622–23, 413 N.E.2d at 267 (morning of trial).[2]

■ The State points to *Dickson* and contends that the same result should obtain here. In *Dickson,* a motion for continuance was renewed the day before trial when the defendant moved to replace his public defender with private counsel who would accept the case only if a continuance was granted. 520 N.E.2d at 105. The motion for continuance was denied, and this Court found no abuse of discretion on appeal. *Id.* Although Lewis agrees in his reply brief that the facts of that case are "very similar," he asserts that it should not control because Dickson merely asserted trial court error in denying his motion for continuance and did not allege a violation of his constitutional right to counsel of choice. If this is a distinction, it is plainly not one of any consequence, as the same result obtains in either circumstance. In

2. Lewis points to *Barham v. State,* in which the Court of Appeals reversed a conviction because the trial court "interfered unreasonably and arbitrarily with Barham's right to retain counsel of his choice *by denying his private counsel's appearance."* 641 N.E.2d 79, 84–85 (Ind.Ct.App.1994) (emphasis added). In *Barham,* the defendant was represented by a public defender but stated at a pretrial conference held six days before the scheduled jury trial that he had retained private counsel. *Id.* at 81. The judge pro tempore observed that if private counsel entered her appearance she "needs to be ready to try this matter on Monday." The next day, five days before the scheduled trial, private counsel entered her appearance and simultaneously filed a motion for continuance. The presiding judge, without conducting a hearing, refused to allow the appearance to be entered. The Court of Appeals observed that,

although private counsel had filed a motion for continuance, there was no showing that she could not have been prepared for trial by the scheduled date. *Id.* at 83–84. Indeed, she offered to act as co-counsel at the trial, "indicating that she could have been prepared for trial on the scheduled date." *Id.* In addition, the Court of Appeals observed that Barham had caused no prior delays in his case, was in jail and would not benefit from a continuance, and had previously expressed dissatisfaction with his attorney. Here, unlike in *Barham,* at the time the trial court denied the continuance, counsel had not yet entered an appearance. In addition, when private counsel did appear in court, he expressly conditioned the entry of his appearance on the granting of a continuance. Unlike *Barham,* the trial court in this case did not refuse to accept private counsel's appearance.

*Parr*, when reviewing an allegation of error in denying a continuance coupled with a contention that the defendant had "a right to counsel of his choosing," we observed that a "trial court, in the exercise of its discretion, may refuse to allow an accused to replace counsel during or immediately before trial because such a substitution would require the court to grant a continuance." 504 N.E.2d at 1016 (quoting *Morgan*, 397 N.E.2d at 300). The denial of a continuance is reviewed for an abuse of discretion, *see Perry*, 638 N.E.2d at 1241, and the denial of the right to counsel of choice, even under Lewis' formulation, is reviewed to determine whether the trial court acted unreasonably and arbitrarily, *see Barham v. State*, 641 N.E.2d 79, 82 (1994) (quoting *United States v. Collins*, 920 F.2d 619, 625 (10th Cir.1990)). Evaluated under either standard, Lewis is not entitled to a new trial.

■ As a final point Lewis asserts that after private counsel appeared in court the trial court should have "at a minimum" determined how long a continuance was needed. He contends that "[t]he need for a short continuance should not stand in the way of the defendant's constitutional right to counsel of his own choosing." We have never held that a trial court must inquire as to the length of a desired continuance under these circumstances and see no reason why we should now impose this burden on trial courts. If newly retained counsel appear prepared to proceed in a specified time, they can do so, and tell that to the court. In the absence of such an offer, there is no obligation on the trial court to inquire.

The trial court observed on the morning of trial that Lewis' case was the oldest case on the docket with an incarcerated defendant and accordingly continued the other cases also set for that date. Not until after these cases had been continued did private counsel appear in the courtroom. Granting Lewis a continuance at this juncture, regardless of the length of the continuance, would have meant that no case would have been tried on that day. The courtroom would have sat vacant, and the time of dozens of prospective jurors summoned for the trial would have been wasted. There was no error.

## II. Authentication of X–Ray

In September of 1998, the State filed a Motion for Leave to X–Ray Defendant. The motion alleged that a witness in a codefendant's trial had testified that Lewis said he had been shot with a shotgun. The witness also observed blood on one or both of Lewis' arms. The State sought x-rays to determine whether pellets from the shell remained in Lewis' torso. The trial court granted the motion. On October 27, x-rays of Lewis were taken at Wishard Hospital. The State sought admission of one of these x-rays, State's exhibit fifty-eight, at trial through firearms examiner Mickey French. When asked at trial how he recognized the exhibit, French responded that he had placed the name, case number, his initials, and the date on the envelope containing the x-ray. He agreed that the x-ray was in the same or substantially the same condition as when he placed it in the envelope. The x-ray bears the name Mark Lewis, the date of the x-ray (October 27, 1998), and the location of the x-ray (Wishard Hospital). French testified that he was present along with defense counsel, the deputy prosecutor, and a detective at Wishard Hospital when the x-ray was taken on October 27. French also testified that he produced a laboratory standard consisting of six different "size shots" and placed this standard in the x-ray at roughly the same level as the pellet in Lewis' leg.[3] The trial court admitted the x-ray over Lewis' objection, observing

---

3. French explained:

When we look at a fired projectile in the body, an x-ray may magnify it. It doesn't tell you how deep in the body, whether it's close to the skin, in the middle—so when I place my standard in it, I'm placing it at roughly the same level so that my standard will magnify the same as the projectile that may be in the body so that I can come close to doing a one-on-one comparison.

that French had testified he was present at the taking of the x-ray, had placed a standard in the x-ray, and had identified that standard in the exhibit.

■ Pre–Rules of Evidence cases held that an x-ray is admissible in Indiana if (1) it is properly authenticated and (2) the x-ray photographer is shown to be competent. *Labelle v. State*, 550 N.E.2d 752, 754 (Ind.1990); *accord* 13A Robert Lowell Miller, Jr., *Indiana Practice* § 901.209, at 62–63 (2d ed.1995). Lewis does not challenge the competency of the x-ray photographer but rather challenges only its authentication. Evidence Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The adoption of the Rules of Evidence does not alter the requirement that the sponsoring witness must establish that the x-ray is a "true and accurate representation of the evidence portrayed." *Labelle*, 550 N.E.2d at 754. We review a trial court's ruling on authentication for an abuse of discretion. *Id.*

■ In *Labelle*, this Court observed that most x-rays are authenticated through a physician or x-ray technician who testifies that the exhibit accurately depicts the internal structure of the person. *Id.* In that case, the State sought admission of an x-ray through the victim who testified about the date and location of the x-ray, the location of the bullet, and the presence of a gold orb and neck brace that appeared in the x-ray. He also testified that the x-ray exhibit at trial looked like the one he was shown shortly after the x-ray was taken. We found no abuse of discretion in allowing the victim to authenticate the x-ray. *Id.* We reach the same conclusion in Lewis' case, where there is as much, if not more, evidence that the exhibit was what French claimed it to be. The x-ray bears the name Mark Lewis, Wishard Hospital, and the date on which it was taken. Each of these items is corroborated by the testimony of French. French removed the x-ray from an envelope bearing his markings. In addition, French identified the six-shot standard that he included in the x-ray.[4] Under these circumstances, the trial court did not abuse its discretion in finding that French had sufficiently authenticated the x-ray.[5]

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

4. Lewis contends that "French's own testimony is that he did not put any objects in the x-ray. He testified that when Mark Lewis was x-rayed, his assistant put the comparison shots in the appropriate places." Lewis does not provide a record citation for this contention but it appears he is referring to French's testimony, "What I—what I do and my assistance in this particular x-ray...." Lewis quotes this passage earlier in his brief with "[sic]" following the word "assistance." However, it appears that French was merely referring to his role in the process, not the involvement of an "assistant." Indeed, a few lines later French stated "when I place my standard in it...." Moreover, when listing the people present for the x-ray, French did not mention any assistant. Although it appears that French placed the standard in the x-ray himself, our conclusion would be the same had an assistant done so at the direction of French.

5. Lewis also suggests that "no one even testified that the x-ray of the leg contained shot from a firearm, a necessary fact for Mr. French's testimony to be relevant. The objects in the x-ray of the leg itself could have been anything." To the extent this is an objection on relevancy grounds, it should have been made in the trial court. Because it was not lodged there, we will not entertain it here. *See Malone v. State*, 700 N.E.2d 780, 784 (Ind.1998) ("A party may not object on one ground at trial and seek reversal on appeal using a different ground.").