**Richard CHILDRESS, Jr.,**
**Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A03–0911–CR–520.**

Court of Appeals of Indiana.

Dec. 28, 2010.

Kristin A. Mulholland, Office of the Public Defender, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Following a jury trial, Richard Childress, Jr., appeals his convictions of robbery and criminal confinement, both Class B felonies. On appeal he raises the sole issue of whether the trial court erred in admitting evidence the State did not disclose until the second day of trial. Concluding the State's late disclosure did not impair Childress's right to a fair trial, we affirm.

### Facts and Procedural History

In September 2008, Childress and Natasha Jakima went to Randall Nalborczyk's home where Nalborczyk purchased drugs for his and Jakima's use from Childress. Nalborczyk realized he did not have money to make the purchase, and Jakima then called a chat line to find a man to flirt with, meet in person, and supply her with illegal drugs.

Jakima spoke with James Angove, invited him to meet her and another woman, and provided him an address. Once he arrived, Jakima led him to a bedroom and began removing her clothes, and then a

group of men brandishing guns barged in. The men threatened and repeatedly struck Angove, and demanded money. He did not look at them because they threatened to kill him if he did, and they eventually blindfolded him.

Upon the group's finding Angove's corporate credit card, they called in Nalborczyk from a car outside to devise a scheme to withdraw cash from the account. Nalborczyk observed three men wearing hooded sweatshirts standing around Angove, and recognized one of them to be Childress. After a wire transfer did not work, they all left the residence with Angove in the trunk of a car and returned to Nalborczyk's home, where Angove transferred money over the phone via Western Union.

Childress remained with Angove and Jakima at Nalborczyk's home, while Nalborczyk and another man left to retrieve the Western Union money from a currency exchange. While the other man remained in the car, Nalborczyk entered the currency exchange and told the employee to call the police to rescue Angove at his home and to arrest the man in the car. When Childress was arrested at Nalborczyk's home, Childress was not wearing a hooded sweatshirt and it is unclear from the record whether he was shirtless or his shirt was torn off during his arrest.

Officers searched Nalborczyk's home at least three times, and Nalborczyk assisted them in locating evidence during one of their searches. Initially charged with four Class B felonies, Nalborczyk made a deal with the State to testify and plead guilty to assisting a criminal, a Class D felony, in exchange for dismissal of the four Class B felony charges.

Childress was charged with two counts of robbery, two counts of criminal confinement, and aggravated battery, all Class B felonies.

Nalborczyk was released from custody in January 2009, and upon returning to his home, discovered a dark-colored hooded sweatshirt that was not his, and which he presumed to be from the group of men he had observed standing over Angove. He informed the prosecutor, who told him to turn it in to the police, but Nalborczyk did not do so.

In August 2009, approximately one week before Childress's trial, the prosecutor conducted a pre-trial meeting with Nalborczyk and neither brought up the sweatshirt. On the evening of August 31, the first day of trial, the prosecutor held a second pre-trial meeting with Nalborczyk, and Nalborczyk gave the sweatshirt to the prosecutor. On September 1, the prosecutor disclosed the sweatshirt and other items in its pockets in supplemental discovery. Nalborczyk was scheduled as the first witness that day.

At a bench conference regarding this disclosure and how to proceed, the trial court barred the State from including reference to the sweatshirt in its case-in-chief, but determined it could be admitted as evidence on rebuttal. On rebuttal, the State introduced the sweatshirt into evidence, and the trial court admitted it over Childress's objection. The jury found Childress guilty of one count of robbery and one count of criminal confinement. Childress now appeals.

### Discussion and Decision

Discovery disputes are resolved by trial courts and reviewed by appellate courts according to the following principles:

A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to com-

ply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Cliver v. State*, 666 N.E.2d 59, 64 (Ind. 1996) (citation omitted).

In other words, generally a defendant must object at trial to the admission of discovery not timely disclosed, and if his objection is overruled, he must seek a continuance. *See id.; Berry v. State*, 715 N.E.2d 864, 866 (Ind.1999) ("Generally, the proper remedy for a discovery violation is a continuance."); *Armstrong v. State*, 499 N.E.2d 189, 191 (Ind.1986) ("Where remedial measures are warranted, a continuance is usually the proper remedy...."). If he is denied a continuance, we will review whether the failure to exclude evidence resulted in clear error and prejudice.

We agree with Childress's implicit argument that this rule regrettably rewards attorneys who do not prepare by allowing admission of their untimely-produced discovery. Neither does this rule penalize the attorney who has failed to adequately investigate and prepare his or her own case or witnesses, preparation which would have led to an earlier detection of the evidence that should have been disclosed earlier. Nevertheless, we observe the wisdom of the rule as it contemplates and provides a remedy where the late disclosure has been intentional or impairs a defendant's right to a fair trial. While the rule does not advance the practice of law toward promoting justice, it appears to allow sufficiently adequate protection of defendants' rights to the extent courts genuinely consider whether late disclosure has impaired a defendant's right to a fair trial. Further, we are not vested with the authority to amend this rule.

Here, because Childress did not obtain or seek a continuance and concedes the State's late production was not deliberate or made in bad faith, he must show that admission of the sweatshirt as rebuttal evidence was so misleading that it impaired his right to a fair trial. The State offered the sweatshirt as rebuttal evidence to Childress's testimony that he was not present and did not participate in any of the events involving Angove, and that he did not wear a black hooded sweatshirt while in Nalborczyk's home.

Childress argues there were unfairly prejudicial circumstances that should have barred admission of the sweatshirt. He explains that Nalborczyk, who made a plea deal with the State, found the sweatshirt months earlier but this finding and the sweatshirt itself were not disclosed to the defense until the day of Nalborczyk's testimony. On rebuttal, Nalborczyk testified Childress was one of the men in a hooded sweatshirt who stood around Angove. Childress further explains that if the defense had adequate time to test trace evidence on the sweatshirt, it might have revealed the sweatshirt was not worn by Childress or he might have altered his trial

strategy, including possibly not testifying himself.

These circumstances did not impair Childress's right to a fair trial. To the extent the defense would have adjusted its trial strategy by exploring the role of the hooded sweatshirts, run trace evidence tests, or considered Childress not testifying, a continuance would have sufficed. As the sweatshirt was disclosed while the State was presenting its case-in-chief and before Nalborczyk testified, Childress certainly could have cross-examined Nalborczyk or otherwise explored uses of this now-known evidence. Perhaps more importantly, Childress could have adjusted his trial strategy going forward to avoid the State's introduction of the sweatshirt on rebuttal by not discussing what Childress was and was not wearing. Childress testified on direct and cross examination that an officer had ripped his shirt off during his arrest. In addition, his theory of the case was that he was not present and did not take part in any events involving Angove, but happened to be there by the time officers arrived to rescue Angove and arrest the perpetrators. Based on this theory, the sweatshirt and Nalborczyk's accompanying testimony are proper rebuttal evidence when admitted to suggest Childress had participated in the events involving Angove.

Therefore, all the unfair circumstances Childress argues resulted from this late disclosure could have been avoided either by seeking a continuance and adjusting trial strategy or by adjusting trial strategy alone. Although we admonish the State for its failure to prepare its case to timely disclose evidence, the late disclosure did not impair Childress's right to a fair trial, and we decline to reverse Childress's convictions.

In addition, the record reveals that even if the sweatshirt had not been introduced on rebuttal, Childress probably would not have fared better. Angove testified Childress spoke to, held a gun to, and physically assaulted Angove at several different times during the evening. Several witnesses testified to Childress taking part or at least knowing of Jakima's plan to rob Angove. Others testified to Childress possessing Angove's credit cards and a handgun, putting Angove in the trunk of a car, and to his specific actions inside the home during the evening. All of this testimony contrasts with Childress's theory of the case that he was not present and took no part in the events. Admission of the sweatshirt on rebuttal was merely additional evidence against this same theory of Childress's case. Therefore, even if the trial court had erred in admitting the evidence, it was harmless error and we would still decline to reverse Childress's convictions. *See* Ind. Trial Rule 61; *Hall v. State,* 796 N.E.2d 388, 400 (Ind.Ct.App. 2003) (discussing harmless error), *trans. denied.*

### Conclusion

The trial court did not err in admitting the sweatshirt as rebuttal evidence, even though the State did not disclose it to Childress until the second day of trial. This late disclosure did not impair Childress's right to a fair trial, and therefore we affirm.

Affirmed.

RILEY, J., and BROWN, J., concur.