Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2013, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CHAD C. DURAN**
Office of Regional Counsel
U.S. Department of Veteran Affairs
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF: D.P. | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1210-MH-807 |
| | ) | |
| RICHARD L. ROUDEBUSH VETERANS AFFAIRS MEDICAL CENTER, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William R. Fatout, Judge Pro-Tempore
Cause No. 49D08-1204-MH-17064

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

D.P. was ordered into temporary commitment for mental health reasons, pursuant to Indiana Code section 12-26-6-1 et seq. He now appeals the trial court's order.

We affirm.

**Issue**

D.P. presents a single issue for our review, which we restate as whether the trial court abused its discretion when it denied D.P.'s request for a continuance so that he could both seek private counsel in place of a court-appointed public defender and attempt to obtain evidence to oppose the petition for involuntary temporary commitment.

**Facts and Procedural History**

On September 6, 2012, D.P., who has a history of psychiatric illness and related hospitalizations[1], was living at Wheeler Mission in Indianapolis. On that day, a petition was filed seeking temporary involuntary commitment of D.P. to the care of the Veteran's Administration Hospital in Indianapolis ("Hospital") for a period of ninety days ("the Petition"). The Petition alleged that D.P. presented a significant risk to himself based upon multiple instances of attempted suicide and suicidal ideations, gestures, and threats, and that D.P. was unable to provide self-care due to his psychiatric condition.

A hearing on the Petition was scheduled for September 14, 2012. At the beginning of the hearing, D.P. requested a continuance in order to seek private counsel and obtain evidence to oppose involuntary commitment for the ninety-day period requested in the

---

[1] D.P. had been subject to an emergency, seventy-two hour commitment on April 26, 2012, for suicidal behavior, substance dependency, and a large benzodiazepine overdose.

Petition. The court observed that the appointed public defender routinely handled cases like D.P.'s, concluded that delay of the hearing would not be in D.P.'s best interests, and proceeded with the commitment hearing. At the conclusion of the hearing, the trial court concluded that the Hospital had met its burden of proof, and ordered D.P. committed to the Hospital's care for ninety days.

This appeal ensued.

## Discussion and Decision

D.P. appeals the trial court's order that he be involuntarily committed to the Hospital's care for ninety days. D.P. contends that he was deprived of his right to due process during the commitment proceedings because the trial court denied his motion for a continuance, which he pursued in order to seek privately-retained counsel and to obtain evidence in his favor.

Where, as here, a litigant seeks to continue a hearing, we review a trial court's denial of that motion for an abuse of discretion. Lewis v. State, 730 N.E.2d 686, 690 (Ind. 2000). Where a litigant appeals from a trial court's denial of the right to counsel of choice, we review such decisions to determine whether the trial court acted unreasonably and arbitrarily. Id.

Civil commitment for medical treatment "constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 426 (1979); A.L. v. Wishard Health Servs., Midtown Cmty. Health Ctr., 934 N.E.2d 755, 758 (Ind. Ct. App. 2010), trans. denied. "Generally stated, due process requires notice, an opportunity to

be heard, and an opportunity to confront witnesses." Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp., 842 N.E.2d 885, 889 (Ind. Ct. App. 2006), trans. denied.

Our statutes set forth numerous due process protections for individuals alleged to be mentally ill and requiring involuntary commitment. The petitioner—whether an individual or an institution—must provide by clear and convincing evidence that the individual sought to be committed "is mentally ill and either dangerous or gravely disabled," Ind. Code § 12-26-2-5(e)(1), and that "detention or commitment of that individual is appropriate." I.C. § 12-26-2-5(e)(2). Such an individual may be committed to a facility for up to ninety days. I.C. § 12-26-6-1.

Proceedings for temporary commitments may be begun by petition, court order, or certain other means. I.C. § 12-26-6-2. An individual subject to temporary commitment proceedings is entitled to notice of hearing stating the time, place, and date of the hearing. I.C. § 12-26-6-3. Such individuals are entitled to representation of counsel. I.C. § 12-26-2-2(b)(4). They are also entitled to "an opportunity to appear at hearings and to testify," I.C. § 12-26-2-3(b), and to "present and cross-examine witnesses at hearings." I.C. § 12-26-2-3(c). Even when subject to temporary civil commitment, however, that adjudication "does not limit or restrict the right of a person to apply to an appropriate court for a writ of habeas corpus." I.C. § 12-26-2-1.

D.P. contends that the trial court violated his due process rights, as enumerated by our statutes and the United States Constitution, when it denied his request for a continuance because he wished to obtain different counsel and seek evidence. D.P. further notes that the

4

trial court was incorrect when it stated that it needed to resolve the Petition within the seventy-two hour period required for emergency civil commitments, and thus incorrectly declined to grant D.P.'s motion to continue the hearing. D.P. also analogizes his situation to that of a criminal defendant seeking a continuance to obtain counsel. The Hospital responds that if there was any error, it was not prejudicial because there was sufficient evidence from which the court could properly conclude that temporary commitment was appropriate in D.P.'s case and D.P. has not established how he was prejudiced by the court's denial of his motion to continue.

Pointing to cases interpreting the Sixth Amendment right to counsel in criminal cases, D.P. observes in his brief that the right to counsel has as its corollary "the right to choose counsel when a defendant is financially able to do so." Lewis, 730 N.E.2d at 689 (citing, inter alia, Powell v. Alabama, 287 U.S. 45 (1932)). This right is not absolute, however, and must be exercised "'at the appropriate stage in the proceeding.'" Id. (quoting Parr v. State, 504 N.E.2d 1014, 1016 (Ind. 1987)). Thus, in criminal cases, our supreme court has concluded on numerous occasions that there was no abuse of discretion in denying last-minute motions to continue trials where the basis for the request is a criminal defendant's wish to replace appointed counsel with privately-retained counsel. Id. at 689-90 (citing, inter alia, Perry v. State, 638 N.E.2d 1236 (Ind. 1994); Beadin v. State, 533 N.E.2d 144 (Ind. 1989); Dickson v. State, 520 N.E.2d 101 (Ind. 1988)).

Assuming, without deciding, that the right to counsel of choice in civil commitment proceedings is identical with that in criminal proceedings, we nevertheless find no abuse of

discretion in the trial court's denial of D.P.'s motion for a continuance in order to retain private counsel. Here, on the day of the temporary commitment hearing, D.P. requested a continuance to obtain private counsel. When asked why he wished to obtain new counsel, D.P. told the trial court that he didn't believe that his court-appointed counsel was "on my side." (Tr. at 3.) When the trial court asked D.P. whether he could afford private counsel, D.P. replied, "It'd be very tight. I can try." (Tr. at 3.) Thus, unlike cases such as Lewis, where court-appointed counsel was ready to proceed to trial and the defendant had retained counsel who was present on the day of trial and unwilling to provide representation without a continuance, D.P. had not established that he was able to retain counsel; rather, he speculated that a different attorney would provide better representation. See Lewis, 730 N.E.2d at 688.

D.P. argues that his situation does not fall within the scope of concerns that give rise to limits on the right to counsel of choice, noting that "[t]his is not a situation where D.P. had months or even weeks to secure counsel of his choice before the hearing" because he was not afforded "a meaningful opportunity to hire counsel" before that date. (Appellant's Br. at 5-6.) Yet D.P. had already been involuntarily committed, and while he faced further deprivation of his liberty, that deprivation was limited in scope to ninety days. That period is far less than the extended periods of incarceration faced by the criminal defendants in the cases upon which D.P. relies, and even in those cases, our supreme court found no abuse of discretion in the trial courts' denials of the various motions to continue. Lewis, 730 N.E.2d at 689-90. D.P. faced neither imprisonment for a criminal offense nor the protracted interference with his liberty interests posed by a criminal conviction, and thus we cannot

6

conclude that D.P. enjoyed greater right to counsel than the criminal defendants in <u>Lewis</u> and other cases.

Further, D.P. retained a remedy beyond an appeal of the temporary commitment order: D.P. could still retain counsel and pursue a writ of habeas corpus. <u>See</u> I.C. § 12-26-2-1. And while D.P. argues that "there is no authority for restricting a person's rights simply because the court unilaterally believes it is in the person's best interest," (Appellant's Br. at 7) he articulates no basis upon which he was prejudiced by any abuse of discretion. For example, no evidence was presented to establish any basis upon which this Court could conclude that he did not receive effective representation, or to indicate what evidence he would have introduced on his own behalf that court-appointed counsel did not provide. We therefore affirm the trial court's decision denying D.P.'s motion to continue the commitment hearing.

Affirmed.

NAJAM, J., and BARNES, J., concur.