# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 12 2017, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jermaine Carl Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 12, 2017 <br><br> Court of Appeals Case No. 45A03-1606-CR-1636 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. 45G04-1308-FA-27 |

**Barnes, Judge.**

# Case Summary

Jermaine Davis appeals his conviction for Class A felony attempted murder. We affirm.

# Issues

Davis raises two issues, which we restate as:

    I.       whether the trial court properly denied his motion for a continuance following the State's late disclosure of evidence; and

    II.       whether the trial court violated his constitutional right to counsel when it denied his motion for a continuance to hire a different attorney.

# Facts

On August 21, 2013, Willie Bailey was at a gas station in Gary when Davis approached him. Davis was the ex-boyfriend of Bailey's sister, Erica. Davis told Bailey that his sister was a "wh***" and threatened to hurt Bailey. Tr. Vol. I p. 65. Outside the gas station, Davis again approached Bailey, called his sister names, and threatened to hurt Bailey. Bailey thought Davis was going to hit him, so Bailey punched Davis, knocking him out. Davis later called Erica and said that he was "going to shoot [their] house up." *Id.* at 134. Davis also called Erica and Bailey's aunt, Glynda Randolph, and told her that he was going to kill Bailey.

[4] The next day, the Bailey family went to a funeral. Bailey rode home that evening with Erica and her friend. As Bailey unlocked the front door of his home, Davis approached him from behind and shot Bailey repeatedly. Erica was sitting in the car with her friend and saw Davis shoot Bailey. Bailey was shot five times and is now paralyzed from the waist down. Immediately after the shooting, Bailey's brother opened the front door, and Bailey told his brother and aunt that Davis shot him. Bailey's brother saw Davis running away. When officers arrived at the scene, Bailey told them that Davis shot him. While in the hospital, Bailey also identified Davis as the shooter in a photo array. The next day, Erica also gave a statement to officers and identified Davis as the shooter. Four cartridge casings and three spent bullets were recovered at the scene. Melissa Oberg of the Indiana State Police Laboratory determined that the four cartridge casings were fired from the same weapon and that the three bullets were fired from the same weapon.

[5] The State charged Davis with Class A felony attempted murder, Class B felony aggravated battery, Class C felony battery by means of a deadly weapon, Class C felony battery resulting in bodily injury, and Class D felony pointing a firearm. On the Saturday before the trial, the deputy prosecutor informed Davis's counsel that he had just discovered Oberg's lab report. The deputy prosecutor immediately provided the report to Davis's counsel. Prior to the start of the trial, the parties discussed the State's late disclosure of the lab reports. Davis noted that a "big theory of [the] defense was that no analysis of any evidence collected was done . . . ." *Id.* at 10. In response to the trial court's

questioning, Davis's attorney noted that the defenses were "alibi and lack of investigation." *Id.* at 11. The trial court noted that the "paperwork saying that the casings came from the same or similar firearm does not inhibit your ability to present an alibi defense" and denied Davis's motion for a continuance. *Id.*

[6] On the first day of the trial, Davis's counsel informed the trial court:

> Judge, we have an issue. When meeting with my client, yesterday, he advised me that he does not have confidence in my abilities to represent him with respect to the trial this week and I believe there is a break-down of communication and he, on his behalf, he wants me to request either a continuance of the trial or he said he wants a new lawyer.

*Id.* at 3. The trial court informed Davis that he was entitled to a public defender but not the public defender of his choosing. The trial court then asked Davis if he had the money to hire an attorney, and Davis responded that he did not. After a discussion of preparation done by his attorney and prior attorneys, the trial court denied the motion for a continuance. Later, immediately before jury selection began, Davis told the trial court that his family was going to hire an attorney. The trial court informed Davis that he had two and one-half years since he was charged to secure a private attorney and that the trial would proceed as planned. The trial court then told Davis that if he hired a private attorney and had the attorney in court the next morning, he would "consider it." *Id.* at 36. The next morning, Davis had not hired a private attorney, and the trial continued as planned.

The jury found Davis guilty of the charges except for the pointing a firearm charge. The trial court merged the remaining counts into the attempted murder conviction and sentenced Davis to forty-five years in the Department of Correction.

## Analysis

### I. Disclosure of Evidence

Davis argues that the trial court abused its discretion by denying his motion for a continuance because of the State's failure to timely disclose the evidence of the lab report. The trial court has broad discretion in dealing with discovery violations. *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999). We will reverse only for an abuse of that discretion involving clear error and resulting prejudice. *Id.* Generally, the proper remedy for a discovery violation is a continuance. *Id.* The exclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial. *Id.* A defendant must object at trial to the admission of discovery not timely disclosed, and if his objection is overruled, he must seek a continuance. *Childress v. State*, 938 N.E.2d 1265, 1268 (Ind. Ct. App. 2010), *trans. denied*. If he is denied a continuance, we will review whether the failure to exclude evidence resulted in clear error and prejudice. *Id.*

Davis has failed to demonstrate that he was prejudiced by the denial of the motion for a continuance. At the trial, Davis's main defenses were that he had an alibi and that the investigation was shoddy. The admission of the lab report

did not harm either defense. The lab report merely noted that the four cartridge casings were fired from the same weapon and that the three bullets were fired from the same weapon. The lab report did not indicate who fired the weapon and did not affect Davis's alibi defense. As for the shoddy investigation defense, Davis was still able to argue that no physical evidence tied Davis to the crime, that the investigation was a "complete rush to judgment and a travesty," that no fingerprint testing was performed, that relevant witnesses were not interviewed, and that the lighting would not have allowed the witnesses to see the shooter. Tr. Vol. II p. 110. We conclude that the trial court did not abuse its discretion by denying Davis's motion for a continuance.

[10] Furthermore, even if the trial court did abuse its discretion, any error was harmless. Several witnesses testified that, on the day before the incident, Davis threatened to kill Bailey. Several eyewitnesses to the shooting identified Davis as the shooter. Indiana Trial Rule 61 requires that we disregard any trial court error that "does not affect the substantial rights of the parties." Given the overwhelming evidence against Davis, the denial of the motion for a continuance did not affect his substantial rights.

## II. *Right to Counsel*

[11] Next, Davis argues that the trial court erred by denying his motion to continue so that he could obtain new counsel. According to Davis, his constitutional right to retain the counsel of his choice was violated by the denial. We review the denial of a motion for a continuance for an abuse of discretion. *Lewis v. State*, 730 N.E.2d 686, 690 (Ind. 2000). The denial of the right to counsel of

choice is reviewed to determine whether the trial court acted unreasonably and arbitrarily. *Id.* The Sixth Amendment guarantees a criminal defendant's right "to have the assistance of counsel for his defense." *Id.* at 688. "A corollary of this right is the right to choose counsel when a defendant is financially able to do so." *Id.* at 688-89. Our supreme court has noted, however, that the right to counsel of choice is not absolute. *Id.* at 689. The right to counsel of choice must be exercised "'at the appropriate stage of the proceeding.'" *Id.* (quoting *Parr v. State*, 504 N.E.2d 1014, 1016 (Ind. 1987)). Our supreme court has held that "'[c]ontinuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers, and the court.'" *Id.* (quoting *Perry v. State*, 638 N.E.2d 1236, 1241 (Ind. 1994)). In *Lewis*, our supreme court noted:

> Indeed, this Court has held a number of times that it is within a trial court's discretion to deny a last-minute continuance to hire new counsel. *See [Perry*, 638 N.E.2d at 1241] (one day before trial); *Beadin v. State*, 533 N.E.2d 144, 145-46 (Ind. 1989) (two days before trial); *Dickson v. State*, 520 N.E.2d 101, 105 (Ind. 1988) (one day before trial); *Vacendak v. State*, 431 N.E.2d 100, 104-05 (Ind. 1982) (morning of trial); *Collins [v. State*, 274 Ind. 619, 622-23, 413 N.E.2d 264, 267 (1980)] (morning of trial).

*Id.*

[12] Here, Davis requested different counsel on the morning of the first day of his jury trial because he did not believe that his current counsel was adequately prepared. Davis's counsel at the time of trial had entered his appearance in March 2015, and the jury trial was not held until February 2016. Davis

complained that his counsel had only spoken to him one time. However, Davis was not incarcerated during this time period. David did not express his dissatisfaction with counsel until the first day of the jury trial. Under these circumstances, the trial court did not abuse its discretion by denying Davis's motion for a continuance, and the trial court did not violate Davis's right to counsel.

## Conclusion

[13] The trial court did not abuse its discretion by denying Davis's motion for a continuance as a result of a delay in the State producing discovery, and the trial court did not abuse its discretion by denying Davis's motion for a continuance to secure new counsel. We affirm.

[14] Affirmed.

Kirsch, J., and Robb, J., concur.