## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 12 2019, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith Franklin Cleveland, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | February 12, 2019 <br><br> Court of Appeals Case No. 18A-CR-1196 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. 45G04-1711-F3-49 |

**May, Judge.**

[1] Keith Franklin Cleveland, Jr., appeals his convictions of Level 3 felony armed robbery[1] and two counts of Level 6 felony pointing a firearm.[2] He presents two issues, which we restate as:

1. Whether the trial court abused its discretion in admitting testimony; and

2. Whether the trial court erred when it denied Cleveland's request for a new attorney on the day of trial.

We affirm.

## Facts and Procedural History

[2] On November 22, 2017, Latisha Cattan, Jordan Arredondo, and Arikka Perez were working at the Burger King in East Chicago, Indiana. A man dressed all in black with only his eyes showing entered the restaurant, brandishing a handgun. The man, later identified as Cleveland, ordered Perez to open the cash registers. Cleveland pointed the gun at both Perez and Cattan. He took several hundred dollars, including several one-dollar coins. When Cleveland fled the restaurant, Cattan called 911.

[3] Just after the robbery but prior to dispatch alerting officers of the robbery at Burger King, East Chicago Police Department Officer Phillip Fabian was

---

[1] Ind. Code § 35-42-5-1 (2017).

[2] Ind. Code § 35-47-4-3 (2014).

patrolling the area and saw a man in black running through the drive-thru of the same Burger King. Officer Fabian thought this was suspicious, so he followed the running man, but then he lost him in the vicinity of Tod Avenue near "Strack and Van Til's" grocery store. (Tr. Vol. 2 at 158.) As Officer Fabian was trying to locate the man in black, dispatch notified officers of the robbery at Burger King. Officer Fabian ceased his location efforts and proceeded to Burger King. There, Officer Fabian took statements from the three employees and received a description of the man who robbed the restaurant. Officer Fabian relayed that information to other officers.

[4] Officer Korey Dumas located a man meeting the robber's description in the vicinity of Tod Avenue. The man ran when ordered to stop, but Officer Dumas was able to detain him. When searched, the man, identified as Cleveland, had "large sums of U.S. currency and gold and silver Sacagawea dollar coins[.]" (*Id*. at 164.) Cleveland was dressed in a "lighter-colored sweater[,]" (*id*. at 165), and "his clothes were disheveled." (*Id*.)

[5] Officer Fabian, noticing the grocery store had outside surveillance, contacted management for the grocery store in order to review the video. Officer Fabian investigated the area around where he had lost track of the man in black earlier in the evening and found a pile of clothes, including "a black hooded sweatshirt, blue sweatpants, a black mesh do-rag and a gray athletic bag, shoulder bag." (*Id*. at 166.)

[6] On November 24, 2017, the State charged Cleveland with armed robbery and two counts of pointing a firearm. On February 26, 2018, with the jury pool present for *voir dire*, Cleveland's attorney notified the trial court that Cleveland "wish[ed] to hire another lawyer to represent him[.]" (*Id*. at 8.) Cleveland's attorney explained he "went over in great detail the fact that if it [was Cleveland's] wish to hire a lawyer, it needed to be done sooner, rather than the day of trial [but that] that's what Mr. Cleveland ha[d] told [him] his wish is this morning." (*Id*. at 8.) The trial court told Cleveland, "It's too late." (*Id*.) Cleveland stated, "I am ready to go." (*Id*. at 9.)

[7] After the jury was sworn, defense counsel informed the trial court that Cleveland's mother was at his office and telling his staff that Cleveland was being forced to proceed with trial. Defense counsel reiterated that Cleveland had requested a speedy trial and that he had also reminded Cleveland of this request. The trial court spoke to Cleveland.

> THE COURT: Mr. Cleveland, did you hear what your attorney just said?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you agree with it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You requested a speedy trial back in December of 2017. Yes?

THE DEFENDANT: Yeah.

THE COURT: You told your attorney to file that on your behalf?

THE DEFENDANT: Yeah.

THE COURT: That would be an indication that you wanted to go to trial; correct?

THE DEFENDANT: Yeah.

THE COURT: Earlier this morning, you said you were ready go [sic] to go to trial; didn't you?

THE DEFENDANT: Yes.

THE COURT: Okay. Okay.

(*Id*. at 30.) The jury trial commenced.

[8]     When Officer Fabian was discussing what he had observed on the video tape from the grocery store surveillance, Cleveland objected to his testimony, stating, "The video speaks for itself." (*Id*. at 194.) The objection was overruled. Officer Fabian testified the video showed "what appears to be a male running down the alley and then proceed to run inside the rear of 4724 [Tod Avenue]. You could see the dark-colored clothing with the hood up." (*Id*.) Later, during testimony of the loss prevention officer from the grocery store, the video was introduced into evidence and played for the jury.

[9] The jury found Cleveland guilty as charged. The trial court entered the three convictions and sentenced Cleveland to a nineteen-year aggregate sentence.

# Discussion and Decision

## Officer Fabian's Testimony

[10] Cleveland argues the trial court abused its discretion when it admitted Officer Fabian's testimony "as to his opinion of what the surveillance video showed[.]" (Br. of Appellant at 9.) He argues Indiana Evidence Rule 1002 ("best evidence rule") required the trial court to exclude Officer Fabian's testimony regarding the contents of the video tape. Cleveland asserts the video tape spoke best as to its contents and Officer Fabian's opinion testimony precluded the jury from making its own conclusions.

[11] We review evidentiary rulings for an abuse of discretion. *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it. *Id*. Error in the admission of evidence is to be disregarded as harmless unless it affects the substantial rights of a party. *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008). In determining whether an evidentiary ruling has affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *Montgomery v. State,* 694 N.E.2d 1137, 1140 (Ind. 1998).

[12] The best evidence rule states: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." Evid. R. 1002.

> The purpose of [the best evidence] rule is to assure that the trier of the facts had submitted to it the evidence upon any issue that will best enable it to arrive at the truth. . . . [I]t excludes all testimony of the contents of such instruments when the instrument itself is available and could be examined by the jury.

*Pinkerton v. State*, 258 Ind. 610, 620-21, 283 N.E.2d 376, 382 (1972).

[13] Officer Fabian testified the video showed "what appears to be a male running down the alley and then proceed to run inside the rear of 4724 [Tod Avenue]. You could see the dark-colored clothing with the hood up." (Tr. Vol. 2 at 194.) Cleveland does not contend Officer Fabian's testimony contradicted anything seen on the video.

[14] Notably, although Cleveland asserts Officer Fabian was offering an opinion of what he saw on the video, Officer Fabian does not say he saw *Cleveland* or even "the suspect" running down the alley. Arguably, although Officer Fabian's testimony gives his opinion as to what he saw on the video, *i.e.*, a dark-clothed male running, these statements are not opinions that affect whether Cleveland was found guilty or not.

[15] In *Jackson v. State*, 411 N.E.2d 609 (Ind. 1980), our Indiana Supreme Court clarified the relevance of the best evidence rule to testimony about a video. Therein, an officer was testifying about hand motions made by a defendant as

he gave his confession because a transcription of the video, rather than the video itself, was admitted into evidence. *Id.* at 611. The Court noted that, unlike many best evidence objections, the witness therein was not testifying to the contents of a writing. *Id.* Rather, the witness was testifying as to what "he had personally seen and heard." *Id.* Therefore, "the 'best evidence' rule [was] not applicable." *Id.* Testimony of what a witness has personally seen or heard is "primary evidence," *id.* at n.1, and not subject to the "'best evidence' rule[.]" *Id.* at 611. Additionally, the Court noted the best evidence rule does not exclude oral testimony that does not dispute the evidence presented in the picture, video, or written instrument. *Id.* at 612. At worst, the Court held an admission of such evidence was harmless. *Id.*

[16] Officer Fabian testified to what he had personally seen and heard on the video. He did not give an exhaustive recitation of each movement on the video that could be construed as similar to reading the contents of a document. Cleveland does not argue Officer Fabian's testimony contravenes what was on the video. Therefore, the best evidence rule is not applicable, and the trial court did not abuse its discretion when it admitted Officer Fabian's testimony. *See id.*

## Right to Counsel

[17] Cleveland argues the trial court violated his "constitutional rights by denying him a continuance so that he could retain counsel of his choice to represent him at trial." (Br. of Appellant at 11.) Cleveland asserts he "informed the court that he wanted to be represented by a different lawyer at the trial." (*Id.*)

[18] The Sixth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, guarantees the accused, in a criminal prosecution, shall "have the Assistance of Counsel for his defence." U.S. Const. Amendment VI. Such a right to counsel of choice "has been described as an 'essential component' of the Sixth Amendment right to counsel[.]" *Barham v. State*, 641 N.E.2d 79, 82 (Ind. Ct. App. 1994). A denial of this right is reviewed to determine if the trial court acted unreasonably and arbitrarily. *Id.* However, this right is not absolute and the right must be exercised at the appropriate stage. *Lewis v. State,* 730 N.E.2d 686, 689 (Ind. 2000). "Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers and the court." *Perry v. State*, 638 N.E.2d 1236, 1241 (Ind. 1994).

[19] Cleveland's sole citation to the record to support his assertion he requested a continuance and time to hire different counsel consists of a portion of the transcript wherein defense counsel spoke to the trial court on the morning of Cleveland's trial:

> Judge, I guess, briefly, before we get started, I sat with Mr. Cleveland most of Thursday evening and some of Friday afternoon. I had conversations with the family. When I left, everything to start preparing, it was – [Cleveland]'s wishes [sic] was to go to trial. He wanted me to go forward, and I have prepared as such. [Cleveland] just told me a minute ago that his wish now is to hire another lawyer to represent him in these cases. I told him at this late hour, I don't think that's very likely to happen due to the fact that the jury has already been pooled. I went over in great detail the fact that if it is his wish to hire a

lawyer, it needed to be done sooner, rather than the day of trial, which is what I feel would happen and has happened. So I just wanted to put on the record that that's what Mr. Cleveland has told me his wish is this morning.

(Tr. Vol. 2 at 8.) However, that was followed by a colloquy between the trial court and Cleveland, which Cleveland does not acknowledge on appeal:

> THE COURT: Okay. Well, thank you. The matter is set for trial. We're ready to go. There's no other lawyer here. You didn't hire anybody. It's too late. So we'll start with – we'll proceed to trial. If you were to do that, you should have done that far before today's date. And sometimes I have seen that – I'm not saying it's happening with you -- as a tactic to stall the trial. It's not happening here today. I have had --
>
> THE DEFENDANT: I am ready to go.

(*Id.* at 8-9.)

[20] Later, after the jury had been sworn, Cleveland's counsel brought to the attention of the trial court the fact that Cleveland's mother had been to defense counsel's office and advised them Cleveland wished to hire different counsel. (*Id.* at 29.) Additionally, Cleveland's mother had told office personnel that defense counsel "was, essentially, forcing" Cleveland to proceed to trial on that day. (*Id.*) Defense counsel advised the trial court about Cleveland's request for a speedy trial and informed the court that he had reminded Cleveland of that request, along with advisements about the deadlines to hire different counsel. The trial court again engaged in a conversation with Cleveland:

THE COURT: Mr. Cleveland, did you hear what your attorney just said?

THE DEFENDANT: Yes.

THE COURT: Do you agree with it?

THE DEFENDANT: Yes.

THE COURT: You requested a speedy trial back in December of 2017. Yes?

THE DEFENDANT: Yeah.

THE COURT: You told your attorney to file that on your behalf?

THE DEFENDANT: Yeah.

THE COURT: That would be an indication that you wanted to go to trial; correct?

THE DEFENDANT: Yeah.

THE COURT: Earlier this morning, you said you were ready go [sic] to go to trial; didn't you?

THE DEFENDANT: Yes.

THE COURT: Okay. Okay.

(*Id*. at 30.)

[21]     Although defense counsel informed the trial court of his belief Cleveland wished to hire different counsel, when addressed by the trial court, Cleveland indicated he was ready to proceed to trial. When the issue was broached again, Cleveland did not request a new attorney, did not complain about his current counsel, and did not request a continuance. Instead, he affirmed his earlier assertion that he was ready to proceed. Therefore, this issue is waived. *See Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000) (failure to seek a continuance constitutes waiver of a claim of error).

[22]     Waiver notwithstanding, even if the colloquy between the trial court and Cleveland could, in any fashion, be construed as a request for a continuance to have time to procure different counsel, "a trial judge faced with an accused in such a circumstance should be permitted to exercise his discretion[.]" *Moreno v. State*, 760 N.E.2d 240, 242 (Ind. Ct. App. 2001). Cleveland's right to counsel of his choice must be exercised "at the appropriate stage of the proceedings[.]" *Washington v. State*, 902 N.E.2d 280, 287 (Ind. Ct. App. 2009), *trans. denied*. If not done in a timely fashion, the trial court "did not interfere unreasonably or arbitrarily with [defendant's] right to hire counsel of choice." *Id*. As Cleveland waited until the morning of the trial to request different counsel, Cleveland's constitutional right to counsel was not violated. *See, e.g., Lewis*, 730 N.E.2d at 690 (rejecting defendant's assertion of Sixth Amendment violation when request to change counsel came on the morning of trial).

# Conclusion

[23] Officer Fabian's testimony was not precluded by the best evidence rule; thus, the trial court did not abuse its discretion by admitting it. Cleveland has failed to show he requested different counsel or a continuance for time to obtain different counsel, and he thus has waived our review of that issue. Waiver notwithstanding, any such request was not made at the appropriate stage of proceedings; therefore, Cleveland's constitutional right to counsel was not violated. Accordingly, we affirm.

[24] Affirmed.

Baker, J., and Robb, J., concur.