**Brian BRONAUGH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1004–CR–384.

Court of Appeals of Indiana.

Jan. 21, 2011.

Transfer Denied April 7, 2011.

Victoria L. Bailey, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Brian Bronaugh appeals his convictions for Attempted Robbery,[1] a class B felony; Possession of a Firearm by a Serious Violent Felon,[2] a class B felony; Residential Entry,[3] a class D felony; and Carrying a Handgun Without a License,[4] a class A misdemeanor. Bronaugh argues that the trial court abused its discretion when it denied his trial counsel's motion to withdraw. Additionally, Bronaugh contends that he was denied due process under the Fourteenth Amendment to the United States Constitution when he was forced to attend the first day of trial wearing his jail clothes. Concluding that the trial court did not abuse its discretion when it denied counsel's motion to withdraw and that Bronaugh was not denied due process, we affirm the decision of the trial court.

## FACTS

Shortly before March 16, 2009, someone broke into James Warfield's home and took approximately ten pounds of marijuana and $2000. Warfield suspected that

---

1. Ind.Code § 35–42–5–1, Ind.Code § 35–41–5–1.

2. Ind.Code § 35–47–4–5.

3. Ind.Code § 35–43–2–1.5.

4. I.C. § 35–47–2–1.

David Killinger was responsible. In retaliation, Warfield devised a plan to recover the money and marijuana, and he recruited his friends David Wilson, Kyle Hittle, and Bronaugh to help.

During the early morning hours of March 16, 2009, Killinger was at his Indianapolis home, where he lived with his mother and two brothers, Jason and Brian. Around 3:00 a.m., Killinger and his friend, Donald Wrightman, were playing video games when they heard knocking at the back door. As they walked towards the back door, they heard someone trying to kick down the front door, which opened shortly thereafter and Killinger called 911.

Armed with an assault rifle and handguns, Warfield, Wilson, and Bronaugh entered the house while Hittle stayed in the car as a lookout. Jason and Brian were hiding in the bathroom when the men entered the home. Bronaugh busted in the door and Jason began wrestling with him. Sometime during this confrontation, Bronaugh's gun went off, but no one was hit. Wilson stormed into the bathroom, however, and shot Brian in the stomach.

While in the bathroom, Bronaugh and Wilson demanded money and Jason told them that he would give him what money they had in the house, which was $700 from their mother's paycheck. As the four of them were heading to get the money, the police entered the home.

On March 19, 2009, the State charged Bronaugh with Count I, class A felony burglary; Count II, class B felony attempted robbery; Count III, class C felony battery; Count IV, class B felony unlawful possession of a firearm by a serious violent felon; Count V, class A misdemeanor carrying a handgun without a license; and Part II of Count V, class C felony carrying a handgun without a license.

Attorney Patrick Stern entered his appearance on behalf Bronaugh on March 20, 2009. Nevertheless, on August 28, 2009, Bronaugh filed a pro se motion for appointment of counsel stating that "Mr. Stern is set to withdraw leaving [Bronaugh] without counsel...." Appellant's App. p. 45. The trial court denied this motion.

On October 21, 2009, during a pretrial conference, Stern explained that "my client's family has not been able to come up with any money" to conduct depositions. Tr. p. 655–56. Stern told Bronaugh's family "that the best thing to do would be for [him] to ask to withdraw and allow the Public Defender to pay for the depos." *Id.* at 656. Although the trial court denied Stern's oral request to withdraw, it concluded that Bronaugh was "indigent now" and ordered the Marion County Public Defender to provide deposition services to Bronaugh. *Id.* at 663.

On December 23, 2009, the trial court received a handwritten letter from Bronaugh in which he essentially stated that Stern had not shared discovery with him and had refused Bronaugh's requests that he file a motion to suppress and a motion to dismiss. Bronaugh wrote that Stern explained to him that the trial court would not grant either motion, which told him "that [Stern] was not working for me." Appellant's App. p. 49.

On January 13, 2010, Stern filed a Motion to Withdraw, stating that Bronaugh had "fired attorney by letter mailed to the Court dated December 23[,] 2009, which is hereby incorporated by reference." *Id.* at 51. The motion also stated that Stern's services were no longer requested and that he could not represent Bronaugh under Indiana Rule of Professional Conduct

1.16(a)(3).[5] A hearing on the motion was scheduled for January 20, 2010.

At the January 20 hearing, the trial court learned that Bronaugh's complaint that Stern had not shared discovery with him was based on misinformation he had received from another inmate. Additionally, Bronaugh expressed his frustration about what he believed had been a lack of communication, but stated that he did not want to fire Stern. Tr. p. 676–77. The trial court responded that "you hired him to be your lawyer, not to be your babysitter." *Id.* at 677. The trial court asked Stern if there was any other reason for wanting to withdraw, and Stern responded, "No, Your Honor, I believe it, I took that kind of as an insult and of being fired." *Id.* at 679–80. The trial court denied Stern's motion to withdraw.

Bronaugh's two-day jury trial commenced on Monday, February 22, 2010, and on that day, Bronaugh appeared wearing jail clothing. The trial court noted that Bronaugh had been told the previous Friday to have civilian clothes for trial. Stern stated that he believed that it was unlawful for the jury to see the defendant in jail clothes. The trial court responded that "he has clothes ... you've known about it, you can't expect me to present him with clothes...." *Id.* at 16. The trial court concluded that Bronaugh would be tried wearing his jail clothing because there was no alternative at that point.

After the presentation of evidence, the jury found Bronaugh guilty of residential entry, a lesser-included offense of burglary, attempted robbery, and carrying a handgun without a license and not guilty of battery. While the jury was deliberating, Bronaugh pleaded guilty to being a serious violent felon in possession of a firearm.

Following a sentencing hearing on March 10, 2010, the trial court sentenced Bronaugh to an executed term of thirty-two and one-half years. Bronaugh now appeals.

## DISCUSSION AND DECISION

### I. Trial Counsel's Motion to Withdraw

Bronaugh contends that the trial court abused its discretion when it denied Stern's motion to withdraw his appearance. Bronaugh emphasizes that Stern should have been permitted to withdraw from his case because of conflicts of interest, namely that Bronaugh was unable to pay Stern and had forced him to defend himself to the trial court, creating friction between them. Whether to allow counsel to withdraw is within the trial court's discretion, and we will reverse only "when denial constitutes a clear abuse of discretion and prejudices the defendant's right to a fair trial." *Strong v. State,* 633 N.E.2d 296, 300 (Ind.Ct.App.1994).

In this case, with regard to Bronaugh's inability to pay, Stern's primary concern appears to have been with the expense of taking depositions, and the trial court remedied this situation by ordering the Marion County Public Defender to provide deposition services. Additionally, at the January 20 hearing, the trial court learned that Bronaugh's letter complaining about Stern was based on inaccurate information and Bronaugh's belief that Stern should have been communicating with him even though there was nothing new about his case to discuss. And Bronaugh stated at the hearing that he did not want to discharge Stern. Under these circumstances, Bronaugh has failed to demonstrate an actual conflict of interest. *See Johnson v. State,* 928 N.E.2d 893, 897 (Ind.Ct.App.

---

**5.** Indiana Rule of Professional Conduct 1.16(a)(3) provides, in relevant part, that "a lawyer shall not represent a client or ... shall withdraw ... if ... the lawyer is discharged."

2010) (stating that an actual conflict of interest is one that requires the defense attorney to advance his own interests to the detriment of his client and " 'by its nature, is so threatening [as] to justify a presumption that the adequacy of representation was affected' " (quoting *U.S. v. Ziegenhagen,* 890 F.2d 937, 939–40 (7th Cir.1989))).

Moreover, at the time of the January 20 hearing, Bronaugh's jury trial was scheduled to begin in one month. Our Supreme Court has stated that a "trial court may refuse a motion for permission to withdraw if the court determines that there will be a resultant delay in the administration of justice." *Moore v. State,* 557 N.E.2d 665, 668 (Ind.1990) (recognizing the "late date" of a motion to withdraw filed three weeks before trial).

More significant, however, is that Bronaugh has failed to demonstrate that he was prejudiced by Stern's continued representation. As stated above, a defendant must demonstrate that he was prejudiced before we may reverse because the trial court denied counsel's motion to withdraw. *See Corder v. State,* 467 N.E.2d 409, 413 (Ind.1984) (stating that "[a]s defendant has not shown that the denial of the motion to withdraw jeopardized or prejudiced him, we cannot now reverse"). Consequently, this argument fails.

## II. Due Process—Jail Clothes at Trial

■ Bronaugh argues that he was denied due process when he appeared for the first day of his jury trial wearing identifiable jail clothes. Under the Fourteenth Amendment to the United States Constitution, a defendant cannot be compelled to appear before a jury in identifiable prison clothing because this may impair the presumption of innocence. *Estelle v. Williams,* 425 U.S. 501, 503–04, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *French v. State,* 778 N.E.2d 816, 821 (Ind.2002). In

determining whether a defendant was compelled to stand trial wearing jail clothing, "we must focus upon what actions the accused and his attorney took to alleviate what they now see as a problem." *Bledsoe v. State,* 274 Ind. 286, 410 N.E.2d 1310, 1314 (1980). Moreover, the failure to object to being tried in jail clothes "negates the compulsion necessary to establish a constitutional violation." *French,* 778 N.E.2d at 821.

Here, the following exchange occurred on the first day of trial before jury selection:

> **THE COURT:** Also have the record reflect that the defendant and his counsel were told Friday that he had to have civilian clothes here by 8:15 in order to wear them during the trial. It is now ten minutes till nine, there are no clothes here, I think I heard in the office that you were expecting his family to bring clothes, there's no family here so at this point absent something really special, he will be in front of the jury in his jumpsuit. Anything else, Mr. [S]tern?
>
> **MR. STERN:** No, Your Honor.
>
> \*      \*      \*      \*      \*      \*
>
> **MR. STERN:** I know—did they change the law on that, about trying them in their jumpsuit?
>
> **THE COURT:** I didn't know there was a law.
>
> **MR. STERN:** I thought they couldn't— the jury couldn't see him (indecipherable). I don't have clothes so—
>
> **THE COURT:** Well, he has clothes, somebody needs to give them to you so—this isn't your first time. You've had to bring clothes for clients before and you've known about it, you can't expect me to present him with clothes. I know that it's not unusual for people from time to time to ask the PD to loan them something but I don't know if

that's happened here or not. This is the way we have to go to trial. I can't think of any option, can you? Mr. Stern, can you think of any option?

**MR. STERN:** No, the only option I can think of would be to try—usually, a lot of times they have clothes in the back that people have left after they've been (inaudible)—

**THE COURT:** We don't keep clothes, no, we don't know about their cleanliness—

**MR. STERN:** They used to.

**THE COURT:** We don't know about the cleanliness, we don't know a thing about them.

**MR. STERN:** Okay.

**THE COURT:** And we don't know the sizes so anything else, Mr. Stern?

**MR. STERN:** No, Your Honor. We're ready to go.

Tr. p. 15–17.

Here, counsel's statements brought to the trial court's attention that Bronaugh's family was supposed to bring him civilian clothes, but they had failed to arrive. Nevertheless, they were not sufficient to constitute an objection. Indeed, counsel never even requested a thirty-minute continuance to give the family a little more time to arrive, and when the trial court asked if there was "anything else," counsel replied, "[w]e're ready to go." *Id.* at 17. Therefore, Bronaugh was not compelled to be tried in his jail clothes.

■ Even assuming solely for argument's sake that counsel's statements were sufficient to constitute an objection, we find no error here. Specifically, Bronaugh's trial date of February 22, 2010, was scheduled on December 9, 2009, giving Bronaugh over two months to arrange for civilian clothing. Additionally, as stated above, the trial court told Bronaugh to have civilian clothing for his jury trial the Friday before his trial was set to begin. Accordingly, Bronaugh had ample time to arrange for civilian clothing and was clearly on notice that he needed to do so. And Bronaugh's failure to make arrangements demonstrates that he was not *compelled* to appear in jail clothing. *See Shackelford v. State,* 498 N.E.2d 382, 384 (Ind.1986) (determining that the defendant was given ample time to obtain civilian clothing and his failure to do so did not result in him being compelling to appear to appear in jail attire); *Bledsoe,* 410 N.E.2d at 1314 (observing that defendant's failure to obtain civilian clothing during the five-week period preceding trial did not result in defendant being compelled to appear in jail attire). Therefore, Bronaugh was not denied due process when the trial court proceeded with his jury trial, and we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

VAIDIK, J., and BARNES, J., concur.