# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2018, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Timothy Allen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 16, 2018

Court of Appeals Case No.
18A-CR-367

Appeal from the Franklin Circuit Court

The Honorable J. Steven Cox, Judge

Trial Court Cause No.
24C01-1108-FB-48

**Brown, Judge.**

[1] Timothy Allen appeals the revocation of his probation. Allen raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion when it denied his counsel's motion to withdraw; and

II. Whether the trial court committed fundamental error when it admitted certain evidence.

We affirm.

## Facts and Procedural History

[2] On August 15, 2012, the court sentenced Allen to twenty years for conspiracy to manufacture methamphetamine as a class B felony with all time suspended to probation. On April 5, 2017, the State filed a verified petition of probation violation. On May 24, 2017, the court entered an order finding that Allen violated the terms and conditions of his probation and sentenced him to serve the previously-suspended sentence of twenty years. Allen appealed and argued that he did not waive his right to counsel at the fact-finding hearing on the petition to revoke his probation. *Allen v. State*, No. 24A05-1706-CR-1303, slip op. at 1 (Ind. Ct. App. October 17, 2017). The State agreed that the record did not reflect a valid waiver of the right to counsel, and we reversed and remanded. *Id.* at 2.

[3] On October 24, 2017, the State filed an amended verified petition of probation violation alleging that Allen committed: Count I, dealing in methamphetamine as a level 3 felony; Count II, possession of methamphetamine as a level 5 felony; Count III, illegal possession of precursors as a level 6 felony; and Count

IV, maintaining a common nuisance as a level 6 felony in cause number 24C01-1704-F3-299. The State also alleged that Allen tested positive for THC on April 17, 2015, for THC and methamphetamine on July 17, 2015, for THC on August 28, 2015, for methamphetamine on July 8, 2016, and for methamphetamine on August 19, 2016.

[4] On October 25, 2017, the court scheduled a fact-finding hearing for December 6, 2017. On November 22, 2017, an attorney was appointed to represent Allen. On November 30, 2017, Allen filed a motion for continuance. On December 5, 2017, the court granted the motion and rescheduled the hearing for January 31, 2018.

[5] On January 24, 2018, Allen's counsel filed a petition to withdraw appearance asserting that Allen "expressed to [counsel] that he does not want him to represent him in this matter and therefore has stopped working with [counsel] on his defense and has made further representation impossible." Appellant's Appendix Volume II at 82. On January 25, 2018, the court denied the petition. That same day, Allen filed a handwritten motion asking to terminate his attorney because he "said he has more clients than just me and couldn't or didn't have time to look up or try to fight for me" and that he believed his attorney did not have "any interest and says I will not beat my case." *Id.* at 85. The motion also stated: "I need an attorney who will at least try to help me." *Id.*

[6]     On January 31, 2018, the court held a hearing and mentioned Allen's motion. The following exchange then occurred:

> THE COURT: . . . [I]s there any response from either, uh, [Allen's counsel] or the State?
>
> [Prosecutor]: State has no response.
>
> [Allen's Counsel]: Your Honor, I've done everything that I can to prepare for trial, other then [sic] that I have no response.
>
> THE COURT: Well, the Court is aware of many things that you have done, the Pre-Trials that we have conducted off . . . out of hearing and with the State. It's never been my experience with counsel that he was not at all times in those and other conferences, uh continuing in not only advocacy, but vehement advocacy on behalf of Mr. Allen. So, it's . . . it's . . . the . . . I don't know what . . . I'm not privy to your conversations with each other, but the Motion itself seems innocuous to . . . uh, the effort I've seen you expend at least when the Court and the State were all present. So, uh, I guess the only question is, uh, are you still in a position to go forward with whatever you've prepared to do in assisting or advocating for Mr. Allen in this matter?
>
> [Allen's Counsel]: Your Honor, I'm prepared to go forward, but I also filed a Motion to Withdraw because Mr. Allen indicated that he did not want me as his counsel. So, that was denied by the Court.
>
> THE COURT: Well, the problem with the request is that to relieve you of . . . of representation puts us back in the position of Mr. Allen being unrepresented . . . .
>
> [Allen's Counsel]: Correct, Your Honor.
>
> THE COURT: . . . . which the Court of Appeals said was inappropriate. Uh, even though he didn't ask for counsel until the day of the hearing, so the Court will deny the Motion so that

we can continue with counsel and with representation of record. The law does not require a harmonious relationship between the parties. It only requires that, uh, confident advocacy is exhibited on behalf of the issues that are presented before the Court. So the Motion to . . . for you to withdraw would be denied and the Motion for substitution of counsel or to remove you as counsel by Mr. Allen would also be denied, uh, and preserved for the record.

Transcript Volume II at 5-6.

[7] Chief Probation Officer Brian Campbell testified that Allen failed drug screens administered by the probation department and was alleged to have committed a new offense. He testified that he was not "personally always" involved in supervising Allen, that Allen Benker and Kent Hildenbrand, who were under his supervision, were engaged in supervising Allen. *Id.* at 8. The prosecutor introduced a drug report as State's Exhibit 2, and Allen's counsel objected on the basis of a lack of proper foundation. Campbell testified that the documents included a drug screen result from Allen's test on April 17, 2015, that he collected the sample, and that Allen signed the document in his presence. He also testified that State's Exhibit 2 included a drug screen result from Allen's test on July 17, 2015, and that Hildebrand collected that sample. He testified that the exhibit included an affidavit from Bridget Lorenz Lemberg who was a technician at the lab. He stated that the documents indicated that Allen tested positive for THC and oxycodone on April 17, 2015, and amphetamine, methamphetamine, and THC on July 17, 2015. Allen's counsel again objected

to the admission of the documents, and the court admitted the documents as State's Exhibit 2.

[8] Campbell testified that State's Exhibit 3 contained the results of a drug screen sent to a different lab, which indicated that Allen tested positive for marijuana, and the court admitted the exhibit without objection. Campbell stated that State's Exhibit 4 contained a drug test result for July 8, 2016, which indicated that Allen tested positive for methamphetamine, amphetamine, hydrocodone, and hydromorphone. The court admitted State's Exhibit 4 without objection. Campbell testified that State's Exhibit 5 consisted of drug screen results from August 19, 2016, indicating Allen tested positive for methamphetamine and amphetamine, as well as a chain of custody form and an affidavit from the toxicologist. The court admitted State's Exhibit 5 without objection.

[9] Campbell also testified that Allen had been charged with new offenses and that State's Exhibit 6 consisted of the new charges. The court admitted State's Exhibit 6 for the limited purpose of showing that Allen was charged with new offenses including Count I, dealing in methamphetamine as a level 3 felony, Count II, possession of methamphetamine as a level 5 felony, Count III, illegal possession of precursors as a level 6 felony, and Count IV, maintaining a common nuisance as a level 6 felony.

[10] Indiana State Trooper Rusty Slater testified that he investigated Allen, checked NPLEx, a national precursor log exchange, and found that Allen had made thirteen to fourteen purchases after his conviction between April 26, 2016, and

March 7, 2017. He testified that Trooper Pete Gates and Trooper Tim Wuestefeld performed a trash pull from Allen's residence and that he went through the trash and found a meth lab. Allen's counsel objected on the basis that Trooper Slater was testifying what somebody said to him, and the court allowed the testimony. Trooper Slater testified that he obtained a search warrant for Allen's residence and discovered a meth pipe, paraphernalia, a coffee filter that tested positive for methamphetamine, ammonia nitrate, liquid fire, sodium hydroxide, and a methamphetamine producing lab.

[11] Franklin County Sheriff's Deputy Ryan Geiser testified that he assisted in the execution of the warrant, located a bottle in the direction from which he saw Allen walking when he arrived, and that the contents of the bottle were consistent with a process of manufacturing methamphetamine known as the shake and bake process.

[12] After the parties' arguments, Allen stated that he "failed because of me" and that he thought he would have been "better off if I could have went somewhere else." *Id.* at 46. The following exchange occurred:

> THE COURT: . . . Now the State's request is for the entire amount to be revoked. I did that once without an attorney. The Court of Appeals said, no, you should have an attorney. You've got one sitting there. I don't know of anything that he's done that is not vehement advocacy on your behalf. I can tell you in our pre-trial conferences with the State and he, he has made every argument under the sun about while [sic] we should put this off. We should postpone it. We should let you prove something else. We should . . . I mean, the thought that he has

not advocated for you is frankly laughable, but he's . . . he's up against a pretty tall brick wall, isn't he?

[Allen]: Yes.

THE COURT: That you created, right?

[Allen]: Yes.

*Id.* at 48. The court later stated:

> And I want you to understand this, . . . State's Exhibit 2, 3, 4 and 5 are all failed drug screens that any of them would have revoked your probation. And we continued to work with you to try to get you to Community Mental Health and to other things that would help you, short of in-patient treatment again because you had already completed that. It just didn't work. No one is faulting you for relapsing, it is expected by people who struggle with addictions. That's why there was no revocations in those periods, but when you turned around and got arrested for the allegation of making or creating for others use, or for your own use. No, that isn't going to happen. That's the problem. Now I don't know if the State can ever prove you did that, they don't have to for revocation of probation. The bar is much higher and there [sic] standard is much lower. All they have to show, is that you have now gone beyond just failing drug screens, and you're buying, your [sic] accumulating precursors, you are involved in things completely against your ability to be involved in a probation . . . probation program. And that's . . . that's exactly what they've shown. So, uh, the Court will . . . order the suspended portion executed.

*Id.* at 50.

[13]     On February 5, 2018, the court entered an order finding that Allen "did violate the terms and conditions of Probation," sentencing him to serve his previously-

suspended sentence of twenty years, and finding that he was allowed to participate in the Purposeful Incarceration Program. Appellant's Appendix Volume II at 90.

## *Discussion*

### I.

[14] The first issue is whether the trial court abused its discretion when it denied Allen's motion that his attorney withdraw. Allen argues that the trial court abused its discretion by ruling on his motion without ever speaking to him or hearing from him at the hearing. He asserts that this Court's prior opinion never barred him from validly waiving his right to counsel at the new hearing or prohibited the trial court from accepting such a valid waiver.

[15] The State argues the grounds alleged in Allen's motion were insufficient to constitute viable grounds for withdrawal of counsel and asserts that Allen's motion was filed only six days before the date of the fact-finding hearing on the petition to revoke. It also contends that Allen failed to prove prejudice from the denial of his motion for his counsel to withdraw. It argues that Allen's claim that his motion was actually a motion to proceed *pro se* is unpersuasive because at no point did he state that he wanted to represent himself.

[16] To the extent Allen phrases the issue as whether he was denied his right to proceed *pro se*, we cannot say that reversal is warranted. The Indiana Supreme Court has observed that a request to proceed *pro se* is a waiver of the right to counsel and that consequently there are several requirements to invoking the

right of self-representation successfully. *Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004). A defendant's request must be clear and unequivocal, and it must be made within a reasonable time prior to trial. *Id.* The record reveals that Allen did not request to proceed *pro se*. Allen's handwritten motion, which stated that he needed an attorney who would try to help him, did not constitute a clear and unequivocal request to proceed *pro se*.

[17] To the extent Allen argues that his right to counsel of choice was violated, we observe that a probationer faced with a petition to revoke his probation is entitled to representation by counsel. *Cooper v. State*, 900 N.E.2d 64, 66 (Ind. Ct. App. 2009); Ind. Code § 35-38-2-3(f). Generally, the right to counsel of choice is not absolute. *Lewis v. State*, 730 N.E.2d 686, 688-689 (Ind. 2000). "It is well settled that the right to counsel of choice must be exercised at the appropriate stage of the proceeding." *Id.* (citations and internal quotation marks omitted). The Indiana Supreme Court has stated that a "trial court, in the exercise of its discretion, may refuse to allow an accused to replace counsel during or immediately before trial because such a substitution would require the court to grant a continuance." *Id.* at 690. "The denial of a continuance is reviewed for an abuse of discretion, and the denial of the right to counsel of choice . . . is reviewed to determine whether the trial court acted unreasonably and arbitrarily." *Id.* (citations omitted). A defendant must demonstrate that he was prejudiced before we may reverse because the trial court denied counsel's motion to withdraw. *See Bronaugh v. State*, 942 N.E.2d 826, 830 (Ind. Ct. App. 2011) (citing *Corder v. State*, 467 N.E.2d 409, 413 (Ind. 1984) (stating that "[a]s

defendant has not shown that the denial of the motion to withdraw jeopardized or prejudiced him, we cannot now reverse")), *trans. denied*.

[18] The record reveals that the State filed its initial verified petition for probation violation on April 5, 2017, and following remand by this Court, the State filed an amended verified petition of probation violation on October 24, 2017, the trial court initially scheduled a fact-finding hearing for December 6, 2017, but later granted a motion to continue filed by Allen and rescheduled the hearing for January 31, 2018. Seven days prior to the hearing, Allen's counsel filed a petition to withdraw his appearance. Six days prior to the hearing, Allen filed a handwritten motion asking to terminate his attorney. Under these circumstances, we cannot say that Allen has demonstrated that he was prejudiced by the denial or that reversal is warranted. *See Bronaugh*, 942 N.E.2d at 830 (citing *Moore v. State*, 557 N.E.2d 665, 668 (Ind. 1990) (recognizing the "late date" of a motion to withdraw filed three weeks before trial)).

## II.

[19] The next issue is whether the trial court committed fundamental error when it admitted certain evidence. Allen argues that the testimony of Trooper Slater and Probation Officer Campbell and State's Exhibits 2 through 5 and 7 constituted inadmissible hearsay which does not pass the substantial trustworthiness test. He states that he did not object to most of the evidence presented by the State and that the fundamental error doctrine applies. The fundamental error doctrine is extremely narrow and applies only when the error

amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*.

[20] "Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment [does] impose [ ] procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (citing Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999) (citing *Black v. Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254 (1985))). The minimum requirements of due process that inure to a probationer at a revocation hearing include the right to confront and cross-examine adverse witnesses. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). *See also* Ind. Code § 35-38-2-3 (providing in pertinent part that a probationer "is entitled to confrontation, cross-examination, and representation by counsel").

[21] "Nonetheless, confrontation rights in the context of probation revocation are not as extensive as they are in criminal trials." *Knecht v. State*, 85 N.E.3d 829, 833 (Ind. Ct. App. 2017). Indiana Evidence Rule 101(c)(2) allows for the admission of evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. Yet, "[t]his does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied*. The Indiana Supreme Court adopted the substantial trustworthiness test as the means for determining

whether hearsay evidence should be admitted at a probation revocation hearing. *Id.* In applying the substantial trustworthiness test, "'ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses.'" *Id.* at 442 (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006)). Failure to provide an explanation on the record is not fatal where the record supports such a determination. *Id.* We also observe that the Indiana Supreme Court noted that the United States Supreme Court's decision on the Sixth Amendment right to confrontation in criminal trials, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), is not implicated because probation revocation hearings are not criminal trials. *Reyes*, 868 N.E.2d at 440 n.1.

[22] In this case, Allen's failure to object to some of the evidence deprived the court of the opportunity to make a substantial trustworthiness determination. Nevertheless, the record reveals that the evidence would support a determination that the evidence challenged by Allen was substantially trustworthy.

[23] The record includes test results from Forensic Fluid Laboratories, an affidavit of Bridget Lorenz Lemberg, M.S., and her curriculum vitae. The drug test results indicated that Allen's sample collected on April 17, 2015, tested positive for THC and oxycodone and that his sample collected on July 17, 2015, tested positive for amphetamine, methamphetamine, and THC. In her affidavit, Lemberg asserted that she is the Laboratory Director at Forensic Fluids

Laboratories, stated she was "familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples, and the validity of the test procedures employed by our laboratory," detailed the procedure employed by the laboratory, stated that she "reviewed all of the records in this lab in regard to the oral fluid sample as identified in the attached report," asserted that "[a]ll of the procedures identified in this affidavit were followed in regards to this sample," and stated that the "attached document(s) are the original or exact duplicates of the original business records maintained by Forensic Fluids Laboratories Inc. in regards to Timothy Allen (Donor)." State's Exhibit 2.

[24] The record also includes an affidavit of Jeff Retz, the Scientific Director and a Certifying Scientist at Witham Memorial Hospital Toxicology Laboratory, his curriculum vitae, and test results. In his affidavit, Retz asserted that, prior to his employment as toxicologist, he worked for fifteen years as the laboratory supervisor at the Indiana Department of Toxicology. He asserted that he was "familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples and the validity of the test procedures employed by our lab." State's Exhibit 3. The affidavit referenced the urine sample taken from Allen on July 8, 2016, and stated that Retz concluded that Allen would have used "an opiate containing drug (or food) some time in the 48 hours prior to collection / an amphetamine some time in the 72 hours prior to collection." *Id.* State's Exhibit 4 and 5 included a similar affidavit of Retz, his curriculum vitae, and test results. In his affidavit, Retz concluded that

Allen's sample taken on August 19, 2016, indicated the presence of amphetamines and that Allen would have used an amphetamine some time in the seventy-two hours prior to collection.

[25] Based upon the record, we conclude that the evidence adequately supports a finding that the affidavits of Lemberg and Retz are substantially trustworthy. *See Reyes*, 868 N.E.2d at 442 (holding that the evidence supported a finding that Retz's affidavits were substantially trustworthy). Consequently, we cannot say that the trial court abused its discretion in admitting the affidavits and toxicology reports.

## Conclusion

[26] For the foregoing reasons, we affirm the revocation of Allen's probation.

[27] Affirmed.

Bailey, J., and Crone, J., concur.